UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| BOKF, N.A., as indenture trustee,<br><br>    Plaintiff,<br><br>vs.<br><br>Gordon Jensen Health Care Association, Inc.; Knollwood NH, LLC; Conquest Health Systems, LLC; Marsh Pointe Management, LLC; Medical Clinic Board of the City of Mobile (Second),<br><br>    Defendants. | Civil Action Number: 1:21-cv-00031 |

### INDENTURE TRUSTEE'S EMERGENCY MOTION FOR THE ENTRY OF AN ORDER: (I) APPOINTING A RECEIVER, (II) GRANTING CERTAIN INJUNCTIVE RELIEF, AND (III) APPROVING RECEIVER FINANCING

COMES NOW, BOKF, N.A., solely in its capacity as indenture trustee ("Indenture Trustee" or "BOKF") under that certain Trust Indenture dated as of September 1, 2013 (the "Indenture"), by and between Medical Clinic Board of the City of Mobile (Second) (the "Issuer") and BOKF, by and through its undersigned counsel, and files this *Emergency Motion for the Entry of an Order: (i) Appointing a Receiver, (ii) Granting Certain Injunctive Relief, and (iii) Approving Receiver Financing* ("Motion"). In support of the Motion, BOKF relies upon the *Verified Complaint for Damages, Appointment of Receiver, Injunctive Relief, and an Accounting* ("Complaint"), at [Doc.1], filed with the Court on January 15, 2021, as well as BOKF's *Memorandum of Law in Support of its Motion for the Entry of an Order: (i) Appointing a Receiver, (ii) Granting Certain Injunctive Relief, and (iii) Approving Receiver Financing* ("Memorandum of Law"), filed contemporaneously herewith, and further states the following in support:

    1.    On January 15, 2021, BOKF filed the Complaint.

2. Gordon Jensen Health Care Association, Inc. (the "Lessee") and the Issuer have defaulted under the Lease Agreement[1] and the Security Deed. Among their defaults, the Lessee and the Issuer have failed to make $10,111,567.65 in due and owing payments of principal, interest, and other fees and charges required under the Lease Agreement and the Security Deed.

3. The Lessee has also defaulted under § 5.4 of the Lease Agreement by failing to honor certain covenants and obligations. Specifically, The Lessee has failed to provide regular financial disclosures including annual audited financial statements.

4. As set forth in the Memorandum of Law, the "Lessor" in the Lease Agreement referenced above is the Issuer, which has assigned its rights, title, and interests under the Lease Agreement to BOKF.

5. Defendants contractually agreed to the appointment of a receiver upon the occurrence of an event of default, and, as set forth in the Memorandum of Law, BOKF is entitled to the appointment of a receiver as a matter of federal law.

6. In this case, the appointment of a receiver is necessary to ensure that the Collateral, including the Facility, is protected and preserved. The Facility, being the primary collateral contemplated by the Bond Documents, is crucial to ensuring that the Bondholders are compensated for their investments in the Bonds.

7. BOKF proposes the appointment of Healthcare Management Partners, LLC ("HMP") as receiver of the Facility. Specifically, on behalf of HMP, BOKF proposes the appointment of Mr. Derek Pierce ("Pierce," and collectively with HMP, the "Receiver"). Pierce's curriculum vitae is attached hereto as **Exhibit "A"** and incorporated herein by reference. Pierce

---

[1] If undefined in this Motion, all capitalized terms shall carry the definitions set forth in the Memorandum of Law.

has also provided an affidavit, attached hereto as **Exhibit "B"** and incorporated herein by reference, in which he sets out his qualifications as well as the results of an assessment of the Facility the Receiver performed at BOKF's direction. That assessment uncovered significant issues with the Facility's operations and finances. The Receiver does not have an ownership interest in the Facility, any of the Defendants, or their respective affiliates, subsidiaries, or parent companies.

8.  In support of the Receiver's power to control and operate the Facility, and in support of his right to secure financing from BOKF for the Facility, § 2.04 of the Security Deed provides that if the Issuer "shall default in the payment, performance or observance of any term covenant or condition of this Deed, Trustee may, at its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Issuer in connection therewith, shall be secured hereby and shall be, without demand, immediately repaid by Issuer to Trustee with interest thereon at the default rate provided by the Bonds. Trustee shall be the sole judge of the necessity for any such actions and of the amounts to be paid."

9.  Additionally, § 2.05 of the Security Deed provides that the "receiver shall have all of the rights and powers permitted under the laws of the state wherein the Land is situated. Issuer will pay to Trustee upon demand all expenses, including receiver's fees, reasonable attorneys' fees actually incurred, and reasonable costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05; and all such expenses shall be secured by this Security Deed."

10. BOKF is therefore entitled to extend funds to the Receiver for payment of the Facility's expenses and obligations in order to ensure that the Facility remains operational and able to generate revenue. BOKF is further entitled to extend funds to the Receiver for payment of the

Receiver's own fees and expenses. As set forth in the Memorandum of Law, the Security Deed entitles BOKF to have these funds repaid on a first-priority basis from the revenues of the Facility.

11.  In further support of the powers and control of the Facility by the Receiver, and as set forth in the Memorandum of Law, BOKF requests that Defendants be enjoined from interfering with, controlling, operating, transferring, encumbering, or managing the Facility.

WHEREFORE, BOKF respectfully requests that this Court enter an order: (i) appointing the Receiver as a receiver (pursuant to Rules 65 and 66 of the Federal Rules of Civil Procedure), (ii) granting a preliminary injunction requiring the Defendants and any other parties affiliated with the Facility to cooperate, and not interfere, with the Receiver, and (iii) approving financing for the Receiver.

[PLEASE FIND SIGNATURE OF COUNSEL ON FOLLOWING PAGE]

Respectfully submitted this 15th day of January 2021.

        */s/ W. Joseph McCorkle, Jr.*
        W. JOSEPH MCCORKLE, JR
        ABN MCC-056
        **BALCH & BINGHAM LLP**
        P.O. Box 78
        Montgomery, AL 36101-0078
        Telephone: (334) 834-6500
        Facsimile: (334) 269-3115
        jmccorkle@balch.com

**BALCH & BINGHAM LLP**[2]
Walter E. Jones, GBN 163287
Patrick N. Silloway, GBN 971966
30 Ivan Allen Jr. Boulevard, NW, Suite 700
Atlanta, Georgia 30309
Telephone: (404) 962-3544
Facsimile: (404) 786-2743
wjones@balch.com
psilloway@balch.com

**FREDERIC DORWART, LAWYERS**[3]
Frederic Dorwart, OBA No. 2436
James A. Higgins, OBA No. 18570
Nora R. O'Neill, OBA No. 19901
124 East Fourth Street
Tulsa, Oklahoma 74103
Telephone: (918) 583-9922
Facsimile: (918) 583-8251
fdorwart@fdlaw.com
jhiggins@fdlaw.com
noneill@fdlaw.com

---

[2] Pending filing and approval of Pro Hac Vice Applications.
[3] Pending filing and approval of Pro Hac Vice Applications.

# Derek A. Pierce

● 1033 Demonbreun Street, Suite 300, Nashville, TN 37203 ● Direct: (615) 584-0719 ● dpierce@hcmpllc.com

## Professional Experience

### Managing Director, Healthcare Management Partners, LLC
2006 to Present

- *June 2020 to Present*: Court-appointed Receiver for an assisted living facility owned by Cypress Point, LLC, located in Florida (Appointed by the Twentieth Judicial Circuit Court of the State of Florida in and for the County of Lee, Case #: 2020 CA 003628).

- *April 2020 to Present*: Court-appointed Receiver for an assisted living facility owned by The Springs at South Biscayne, LLC, located in Florida (Appointed by the Twelfth Judicial Circuit Court of the State of Florida in and for the County of Sarasota, Case #: 2020 CA 001688 NC).

- *May 2020 to Present*: Court-appointed Receiver for 4 skilled nursing facilities located in Texas (Appointed by the District Court of Tarrant County, Texas, Case No.: 017-316671-20).

- *October 2019 to July 2020*: Court-appointed Receiver for an assisted living facility owned by Inspired Living of Sugar Land, LLC, located in Texas (Appointed by the United States District Court for the Southern District of Texas, Case #: C.A. 3:19-cv-00185).

- *January 2019 to September 2019*: Court-appointed Receiver for an assisted living facility owned by River Highlands, LLC located in Alabama (Appointed by the Circuit Court of Jefferson County, Alabama, Case #: 01-cv-2018-904859-EAF).

- *January 2018 to May 2019*: Court-appointed Receiver for an assisted living facility owned by Decatur ALF Group, LLC, located in Alabama (Appointed by the United States District Court for the Northern District of Alabama, Case #: 5:17-cv-02141-HNJ).

- *January 2018 to May 2019*: Court-appointed Receiver for an assisted living facility owned by Cullman ALF Group, LLC, located in Alabama (Appointed by the United States District Court for the Northern District of Alabama, Case #: 5:17-cv-02140-AKK).

- *April 2017 to October 2019*: Court-appointed Receiver for American Family Services, located in Parksley, Virginia (Appointed by the United States District Court for the Eastern District of Virginia, Case #: 2:17-cv-00167). AFS owned an Assisted Living Facility and a Skilled Nursing Facility located on a single campus on the Eastern Shore of Virginia.

- *November 2016 to January 2018*: Court-appointed Receiver for FHR-Yuma Assisted Living Facility, located in Yuma, Arizona (Appointed by the Superior Court of State of Arizona in and for the County of Maricopa, Case #: cv-2016-017008).

- *October 2016 to December 2020*: Court-appointed Receiver for 9 Manor House Assisted Living Facilities (ALFs), located in Alabama and Georgia (Appointed by the United States District Court for the District of New Jersey, Case #: 2:17-cv-00393). In January of 2017, the Securities and Exchange Commission (SEC) consolidated several separate pending receiverships into a single receivership. Prior to this time, Mr. Pierce served as receiver over 4 of these ALFs in separate

- jurisdictions in Georgia and Alabama.  Each of these ALFs had distinct memory care (aka specialty care) units.

- *April 2016 to May 2017*: Chief Restructuring Officer/Chief Financial Officer, Family Health, LLC, Honolulu, Hawaii, 75-bed and 92-bed Nursing homes.

- *September 2014 to December 2014; September 2015 to March 2016*: Chief Financial Officer, Tennessee Health Management, Inc., Parsons, Tennessee, Long-Term Care System consisting of 31 nursing homes, four behavioral hospitals, an institutional pharmacy, home care and hospice services.

- *July 2014 to March 2018*: Court-appointed Chapter 11 Trustee over Salem Housing Corporation, (Appointed by the United States Bankruptcy Court for the Northern District of Georgia, Case # 05-44617), 114-bed Nursing Home located in Jasper, Texas.

- *April 2014 to January 2018*: Court-appointed Receiver for Salem Nursing & Rehabilitation of Reform, Inc. (Appointed by the United States District Court for the Northern District of Alabama, Case #2:11-cv-01509), 84-bed nursing home located in Reform, Alabama.

- *March 2014 to February 2018*: Court-appointed Receiver for Salem Nursing & Rehabilitation of Tuskegee, Inc. (Appointed by the United States District Court for the Middle District of Alabama, Case # 3:14-cv-0059), 120-bed nursing home located in Tuskegee, Alabama (facility was closed prior to appointment).

- *February 2012 to March 2014*: Chief Financial Officer, Loretto, Syracuse, NY, Long-Term Care System consisting of 700-bed nursing home, Medicare managed care PACE program, and 1,500-units of Senior housing.

- *September 2009 to May 2010:* Chief Restructuring Officer of three partially developed National Senior Campus communities in the Erickson Retirement Communities bankruptcy (United States Bankruptcy Court for the Northern District Texas, Case No.: 09-37010).

- *May 2009 to September 2009*: Court-appointed Bankruptcy Court Examiner for Hidden Acres Manor (Appointed by the United States Bankruptcy Court for the Middle District of Tennessee, Case # 1:08-bk-11614), 72-bed nursing facility with a 30-unit apartment building located in Mt. Pleasant, Tennessee.

- *December 2007 to March 2009*: Chief Financial Officer, Physicians & Surgeons Hospital Group (d/b/a Tri-Lakes Medical Center), Chapter 11 Bankruptcy Restructuring and Sale (United States Bankruptcy Court for the Northern District of Mississippi, Case # 07-12967), 2-campus hospital located in Batesville, Mississippi.

## Director, Alvarez and Marsal
2005 to 2006
- New York-based Healthcare Restructuring Practice


## President/Founder, FiHealth, LLC
2000 to 2005
- Nashville-based Healthcare consulting business

**Manager, Arthur Andersen**
1992 to 2000
- Atlanta-based Healthcare Business Consulting Practice

**Auditor, Blue Cross and Blue Shield of Alabama**
1988 to 1992
- Birmingham-based Medicare auditor contractor for Medicare program

## Education

**Samford University**
1986 to 1990
- Bachelors of Science in Business, with a concentration in Accounting

## Professional Organizations and Activities

- Member of the Turnaround Management Association

# EXHIBIT "B"

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| BOKF, N.A., as indenture trustee,<br><br>    Plaintiff,<br><br>vs.<br><br>Gordon Jensen Health Care Association, Inc.; Knollwood NH, LLC; Conquest Health Systems, LLC; Marsh Pointe Management, LLC; Medical Clinic Board of the City of Mobile (Second)<br><br>    Defendants. | Civil Action Number: _____ |

## AFFIDAVIT OF DEREK PIERCE

1. I am over twenty-one (21) years old, suffer from no mental disability, and am legally competent to make this Affidavit.

2. This Affidavit is based on my personal knowledge.

### BACKGROUND

3. I am a Managing Director of Healthcare Management Partners, LLC ("HMP"). I have worked at HMP as a Managing Director since 2006. HMP is a turnaround and consulting firm specializing in assisting healthcare organizations experiencing current, or anticipated, financial challenges navigate their way to positive outcomes. HMP's core services include turnaround management, interim management, financial advisory, and litigation support services. HMP also provides data analysis & benchmarking tools utilizing a proprietary product, HMP MetricsTM. HMP is headquartered in Nashville, Tennessee, but also maintains locations in Birmingham, Alabama, Washington, D.C., Houston, Texas, Atlanta, Georgia, and Phoenix,

**EXHIBIT "B"**

Arizona.

4.  Before joining HMP, from 2005 to 2006, I was a Director at Alvarez and Marsal, a global turnaround and restructuring firm based in New York. While at Alvarez and Marsal, I worked as a member of the turnaround team that oversaw the restructuring and financial restatement of HealthSouth Corporation in the wake of the massive financial reporting fraud that was revealed in 2003.

5.  Before joining Alvarez and Marsal, I owned my own healthcare consulting company (2000 to 2005), worked as an accountant for Arthur Andersen in its healthcare consulting practice (1992 to 2000), and worked as a Medicare auditor contractor for Blue Cross and Blue Shield of Alabama (1988 to 1992). I obtained a B.S. in Accounting from Samford University in 1990.

6.  I have approximately 30 years of professional experience focused solely on the healthcare industry, having served as court-appointed receiver, court-appointed examiner, Chief Financial Officer, Chief Restructuring Officer, Director of Reimbursement, Medicare auditor, Medicare cost report preparer, forensic accountant, compliance consultant, financial auditor, and financial advisor. I have audited, managed, and consulted with all types of healthcare providers including government owned, community not-for-profit, academic, and investor-owned entities. As a receiver, I have conducted multiple stalking horse auctions of skilled nursing facilities and assisted living facilities, including thirteen (13) since 2018.

7.  While at HMP I have served on numerous occasions as a court-appointed receiver over financially-distressed health care providers, including skilled nursing facilities ("SNFs") and assisted living facilities ("ALFs"). Many of the ALFs had memory care units that specialize in

housing patients suffering from dementia and Alzheimer's, sometimes referred to as "specialty care ALF units" or "SCALFs."

8. I have been appointed as a receiver 15 times by courts over skilled nursing and assisted living facilities as follows:

 a. May 2020 to Present (ongoing): Court-appointed receiver for four (4) skilling nursing facilities. Appointed by the District Court of Tarrant County, Texas (Case No.: 017-316671-20).

 b. April 2020 to Present (ongoing): Court-appointed receiver for assisted living facility that includes memory care units. Appointed by the Circuit Court for the Twelfth Judicial Circuit for Sarasota County, Florida (Case No.: 2020 CA 001688 NC).

 c. June 2020 to Present (ongoing): Court-appointed receiver for assisted living facility that includes memory care units. Appointed by the Circuit Court for the Twentieth Judicial Circuit for Lee County, Florida (Case No.: 2020 CA 003628).

 d. January 2019 to September 2019 (concluded): Court-appointed Receiver for assisted living facility that included memory care units. Appointed by the Circuit Court of Jefferson County, Alabama. (Case No.: 01-CV-2018-904859-EAF).

 e. October 2019 – July 2020 (concluded): Court-appointed Receiver for assisted living facility that includes memory care units. Appointed by the United States District Court for the Southern District of Texas. (Case No.: 3:19-

cv-00185).

  f.  January 2018 to May 2019 (concluded): Court-appointed Receiver for assisted living facility that included memory care units. Appointed by the United States District Court for the Northern District of Alabama. (Case No.: 5:17-CV-02141-HNJ).

  g.  January 2018 to May 2019 (concluded): Court-appointed Receiver for assisted living facility that included memory care units. Appointed by the United States District Court for the Northern District of Alabama. (Case No.: 5:17-CV-02140-AKK).

  h.  April 2017 to October 2019 (concluded): Court-appointed Receiver for assisted living facility and skilled nursing facility. Appointed by the United States District Court for the Eastern District of Virginia. (Case No.: 2:17-CV-00167).

  i.  January 2017 to December 2020 (concluded). Court-appointed Receiver over 9 assisted living facilities that included memory care units located in Alabama and Georgia. All nine facilities have been sold. Appointed by the United States District Court for the District of New Jersey in an action brought by the Securities and Exchange Commission (the "SEC Enforcement Action"). (Case No.: 2:17-CV-00393).

  j.  October 2016 to April 2017 (concluded): Court-appointed Receiver for assisted living facility. Appointed by the Superior Court of Floyd County, Georgia. (Case No.: 16CV01749JFL02). This receivership was later consolidated

4

into the SEC Enforcement Action.

k.  October 2016 to April 2017 (concluded): Court-appointed Receiver for assisted living facility. Appointed by the Superior Court of Muscogee County, Georgia. (Case No.: SU16CV279208). This receivership was later consolidated into the SEC Enforcement Action.

l.  October 2016 to April 2017 (concluded): Court-appointed Receiver for assisted living facility. Appointed by the Superior Court of Chatham County, Georgia. (Case No.: CV16-0862-KA). This receivership was later consolidated into the SEC Enforcement Action.

m.  October 2016 to April 2017 (concluded): Court-appointed Receiver for assisted living facility. Appointed by the Circuit Court of Montgomery County, Alabama. (Case No.: 03-CV-2016-901323). This case was later consolidated into the SEC Enforcement Action.

n.  November 2016 to January 2018 (concluded): Court-appointed Receiver for assisted living facility. Appointed by the Superior Court of the State of Arizona in and for the County of Maricopa. (Case No.: CV-2016-017008).

o.  April 2014 to January 2018 (concluded): Court-appointed Receiver for skilled nursing facility. Appointed by the United States District Court for the Northern District of Alabama. (Case No.: 2:11-CV-01509).

p.  March 2014 to February 2018 (concluded): Court-appointed Receiver for skilled nursing facility. Appointed by the United States District Court for the Middle District of Alabama. (Case No.: 3:14-CV-0059).

9. The majority of the above receivership appointments resulted in court-supervised sales or restructurings of the facilities in question.

10. During each appointment and during any sale process, I have worked to make sure that the receivership process causes a minimal disruption to the residents and employees of the facility. Generally, I have found that, as Receiver, I have been able to make improvements for the residents and employees at the facility.

## ASSESSMENT

11. BOKF, N.A., as indenture trustee, hired HMP to conduct an assessment of the skilled nursing facility located in Mobile, Alabama, commonly referred to as Knollwood, which facility is owned by Gordon Jensen Health Care Association, Inc. ("Gordon Jensen") and operated by its wholly-owned subsidiary, Knollwood NH, LLC ("Knollwood").

12. HMP's assessment included a review of occupancy data, operating expenses, market conditions, the latest Alabama Department of Public Health ("ADPH") surveys, and physical plant, as well an assessment of capital needs and management capabilities.

13. Information relied on in conducting the assessment was provided by Gordon Jensen's counsel, pulled from the Electronic Municipal Market Access system ("EMMA"), or publicly available sources, such as from Medicare cost reports.

14. HMP's assessment revealed the following:

Operations

    a. Gordon Jensen has no reported operations—it exists entirely to own and control its subsidiary, Knollwood.

    b. Knollwood owns a 71-bed skilled nursing facility (the "Facility") in

Mobile Alabama.

Management Fees

  c. A review of Knollwood's financial records revealed payments to three vendors: Conquest Health Systems, LLC ("<u>Conquest</u>"), Marsh Pointe Management, LLC ("<u>MPM</u>"), and an accounting firm.

  d. According to filings from a civil action brought against Christopher F. Brogdon by the Securities and Exchange Commission, MPM is affiliated with Brogdon and has had its assets pledged to the SEC for the benefit of bondholders.

  e. Testimony from Gordon Jensen's bankruptcy case confirms Conquest and MPM are both paid a management fee for managing the Facility.

  f. Testimony also confirms MPM and the accounting firm are both responsible for payroll and accounting services.

  g. In my experience, the services provided by these vendors would typically be covered under a management agreement with a single vendor. Spread out amongst entities in this way, the fees paid to these vendors should be paid by the manager rather than the Facility.

  h. An analysis of the fees paid shows Knollwood is paying $34,520 per month to these three vendors for management services.

  i. In my experience, the market rate for management fees at skilled nursing facilities is 5% of revenue. Here, based on financial information from January 2020 to June 2020, an appropriate monthly management fee for the Facility would be $24,232, or $10,288 per month less than the Facility is paying to the three

7

n/a
n/a

entities.

j. An unaffiliated, third-party management company could reduce the management fee to the market rate.

Labor Costs

k. To gauge how well a skilled nursing facility is managing labor cost compared to itself historically and its peers, labor cost was divided by actual patient days to create "labor cost per patient day" or "ppd."

l. An analysis of publicly available cost reports for Knollwood and four immediate competitors revealed that for the past five years Knollwood's labor cost ranges on average from $25 to $41 ppd over its peers.

m. Annualized, this results in losses of up to $1,022,622.

n. In my experience, a qualified manager could reduce this labor cost by more than $600,000 per year.

Loans

o. As of June 30, 2020, Knollwood has advanced funds to MPM totaling $198,032. The outstanding loan to MPM has reached as high as $446,515 in April 2020.

p. Additionally, Gordon Jensen's balance sheet from 2018 showed it was owed $4.7 million from various affiliate entities. However, Gordon Jensen's filings in the bankruptcy case indicate it has no such assets.

q. An unaffiliated, third-party management company could pursue collection of these outstanding loan balances.

The Facility

 r. Given various restrictions imposed as a result of the COVID-19 pandemic, HMP was not able to conduct a review of the interior of the Facility. However, HMP was able to conduct a review of the outside of the building.

 s. That review found there is a need for several capital improvements, including repair work on the eaves and drainage system.

Patient Care

 t. HMP contracted with the firm Pathway Health to conduct an executive summary of recent ADHP survey findings, quality measure data, and COVID-19 data relating to Knollwood.

 u. Pathway Health's review showed that in March 2020, less than a week before the proclamation of the worldwide pandemic, state surveyors completed an inspection of the Facility and found there was no implemented "Infection Prevention and Control Policy."

 v. From December 2018 to March 2020, Knollwood was not maintaining infection control logs, which are required to determine if repeat like infections are occurring. This assists in determining whether infections are random or represent an outbreak of illness originating in the facility.

 w. Data also revealed patients at the Facility had an above-average urinary tract infection rate (4.2% of patients v. 2.7% average).

 x. Patients at the Facility also had below-average rates of immunization. Only 20% of the Facility's patients received a pneumonia vaccine

(as opposed to the 93.9% national average) and only 90.3% received the influenza vaccine (as opposed to the 96% national average).

15. The issues identified in HMP's assessment significantly reduce the value of the Facility as a going concern.

16. It is my professional opinion, based on more than 30 years' experience in the healthcare industry, these issues could be corrected, and the value of Facility increased substantially, with proper management.

### Receivership

17. I understand that I have been nominated by BOKF, N.A. to serve as receiver of the Facility. If appointed as receiver, the health, safety and wellbeing of the residents of the Facility will be my first and primary concern. Subject to the Court's oversight, I will exercise my business judgment and utilize my experience and training to identify and pursue the best course of action to preserve and maximize the value of the Facility for the benefit of all Facility stakeholders.

18. If appointed as receiver, I will have at my disposal and use, as needed, the experience of my colleagues at HMP. HMP has fourteen (14) professionals with backgrounds in healthcare operations, clinical oversight and compliance, financial reporting, accounting, and information technology. The professionals at HMP will assist me in the management, clinical, and accounting functions necessary to operate, as receiver, the Facility.

19. If appointed as receiver, HMP would charge $575.00 per hour for my services, plus any reasonable and necessary out-of-pocket expenses directly related to the performance and discharge of the receiver's duties. When necessary, appropriate and reasonable to achieve economy in my judgment, other HMP personnel may be utilized to assist in the performance and

discharge of the receiver's duties at the following rates: Director ($425/hr), Senior Associate ($350/hr), and Associate/Accountant ($250/hr). The receiver's fees and expenses will be paid out of the receivership estate.

20. These rates are consistent with the rates normally charged by HMP, and that have been approved by other courts for similar engagements. In my opinion, the rates quoted above are reasonable and customary in the industry, and comparable with the rates charged by other healthcare restructuring and turnaround firms.

Further Affiant sayeth not.

This 15TH day of January, 2021.

_____
DEREK PIERCE

Sworn to and subscribed before me
This 15th day of January, 2021

_____
Notary Public