## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BOKF, N.A., as Indenture Trustee,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. 21-00031-KD-B** |
| ) | |
| **GORDON JENSEN HEALTH CARE** ) | |
| **ASSOCIATION, INC.; KNOLLWOOD** ) | |
| **NH, LLC; CONQUEST HEALTH** ) | |
| **SYSTEMS, LLC; MARSH POINTE** ) | |
| **MANAGEMENT, LLC; AND MEDICAL** ) | |
| **CLINIC BOARD OF THE CITY OF** ) | |
| **MOBILE (SECOND);** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This action is before the Court on the Emergency Motion for the Entry of an Order: (I)

Appointing a Receiver, (II) Granting Certain Injunctive Relief, and (III) Approving Receiver

Financing and Memorandum of Law in Support filed by BOKF, N.A. as Indenture Trustee (docs.

3, 4); Brief in opposition to Appointment of Receiver Injunctive Relief and Receiver Financing

filed by Defendants Gordon Jensen Health Care Association Inc., Knollwood NH LLC,

Conquest Health Systems LLC, and Marsh Pointe Management LLC[1] (doc. 24); Defendants'[2]

Post-Hearing Brief in Support of Appointment of Examiner (doc. 36); Defendants' Post-Hearing

---

[1] With the exception of Medical Clinic Board of the City of Mobile (Second), the parties filed a Joint Motion to Determine Subject Matter Jurisdiction (doc. 23). The motion was heard February 10, 2021.  For reasons stated on the record, the Motion was granted and the dispensable, non-diverse Defendant Marsh Pointe Management, LLC was dismissed.

[2] "Defendants" do not include the Medical Clinic Board. Counsel for the Board appeared at the hearing but the Board did not participate.

Brief in Opposition to Appointment of Receiver, Injunctive Relief, and Receiver Financing (doc. 39); and BOKF's Response to Defendants' Post-Hearing Brief in Support of Appointment of Examiner (doc. 40).  A hearing on the Motion was held February 10, 11, and 12, 2021.

Upon consideration of the arguments and evidence presented, the Court makes the following findings of fact and conclusions of law.

A. Jurisdiction

In January 2021, BOKF as the Indenture Trustee, filed a Verified Complaint claiming Breach of Bond Documents and Money Judgment (Count One), Appointment of Receiver (Count Two), Injunctive Relief (Count Three) and Accounting (Count Four) (doc. 1).  The Court has subject matter jurisdiction over this action. BOKF is a national bank headquartered in Oklahoma, therefore a citizen of Oklahoma, and diverse in citizenship from all defendants. The amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.

Defendant Gordon Jensen Health Care Association, Inc. (the "Lessee") is a Michigan nonprofit corporation with its principal place of business in Georgia that leases a 71-unit skilled nursing and 24-unit specialty care facility located in the City of Mobile, Alabama (the "Facility").  Defendant Knollwood NH, LLC ("Knollwood") is a Georgia limited liability company that is a wholly owned subsidiary of the Lessee, a citizen of Michigan and Georgia, and holds the operating license for the Facility.  Defendant Conquest Health Systems, LLC ("Conquest") is a Georgia limited liability company that has been engaged by Knollwood to perform certain operational management services for the Facility. Conquest's sole member is Scott Hardin, an individual who is a citizen of Georgia. Defendant Medical Clinic Board of the City of Mobile (Second) (the "Issuer") is a public body corporate and politic created and existing under the laws of the State of Alabama, with its principal place of business in Alabama.  The

Board is the record title holder of the Facility.

B. Venue

Venue is proper in this District. A substantial part of the events which give rise to the complaint occurred in Mobile County, Alabama in the Southern District of Alabama and the Facility at issue is located in Mobile County, Alabama. 28 U.S.C. § 1291(b)(2).

C. Factual background

The Issuer (Medical Clinic Board) issued Gordon Jensen Health Care Association, Inc. Project Series 2012A and 2012B Bonds, in the aggregate principle amount of $8,610,000 (the "Bonds") for the purpose of, *inter alia*, providing funds to purchase the Facility. The Issuer issued and sold the Bonds pursuant to the Trust Indenture (the "Indenture"), dated September 1, 2013, between the Issuer and the BOFK. The Facility was subsequently leased to Gordon Jensen, pursuant to the terms of a Lease Agreement (the "Lease Agreement") dated September 1, 2013.

The Lessee's obligations under the Lease Agreement and the Bonds were secured by a Mortgage and Security Deed (the "Mortgage"), by which the Issuer, and its successors and assigns, granted a first-priority security interest in, among other things, the following collateral (the "Collateral") to BOKF:

(a) the land on which the Facility was constructed;

(b) the Facility itself, as well as other improvements on the land;

(c) all furnishings, furniture, fixtures, machinery, appliances, vehicles, and personal property in any way connected with the use and enjoyment of the Facility; and

(d) all existing and future accounts, revenues, contract rights, all existing and future instruments, chattel paper and general intangibles of the Lessee and all proceeds therefrom, directly related to or arising from the Facility and/or its operation.

The Issuer assigned all its rights, title, and interests under the Lease Agreement, and any and all

revenues pledged to satisfy repayment of the Bonds, to BOKF as Indenture Trustee under the Granting Clauses of the Indenture.

       D. Defaults under the terms of the Bond Documents

Default arises from the failure to pay, when due and payable, required payments under the Lease Agreement. Pursuant to Section 6.1(a) of the Lease Agreement, the Lessee's failure to make payment when due is an Event of Default under the Lease Agreement. Additionally, pursuant to Section 901(d) of the Indenture, the occurrence of an Event of Default under the Lease Agreement also constitutes an Event of Default under the Indenture.

Default has occurred and is continuing under Section 2.01 of the Mortgage as the Lessee has defaulted in its payment obligations and the Issuer has not paid the Lessee's obligation. Specifically, in June 2017, BOKF notified the Lessee and the Holders of the Bonds of the Lessee's failure to make payment when due, and the Lessee has failed to cure that default and has not made a further payment since April 2018. Also, on January 11, 2021, following failure of the Lessee to cure the defaults, and following the grant of relief from the automatic stay of section 362 of the United States Bankruptcy Code by the United States Bankruptcy Court for the Northern District of Georgia,[3] BOKF sent the Lessee and the Issuer a Notice of Acceleration and Demand for Payment under the Bond Documents, accelerating all payments owed by the Lessee under the Lease Agreement. As of the filing of the Complaint in this case, the Lessee has failed to pay the amounts due under the Bond Documents and remains in default. As of January 6, 2021, the following amounts were owed by Lessee under the Bond Documents:

| | |
|---|---|
| Principal: | $ 8,075,061.97 |
| Interest: | $ 1,796,832.29 |

---

[3] Order, In re Gordon Jensen Health Care Association, Inc., Case No. 20-61915-BEM, Doc. 74 (Bankr. N.D. Ga. Dec. 17, 2020).

Trustee's Fees and Expenses:        $ 241,673.39

Total Outstanding:                  $ 10,111,567.65


E. Appointment of a receiver

"[F]ederal law governs the appointment of a receiver by a federal court exercising diversity

jurisdiction." National Partnership Inv. Corp. v. National Housing Development Corp., 153 F.3d

1289, 1291-92 (11th Cir. 1998);[4]  Fed. R. Civ. P. 66 (the federal rules of civil procedure "govern an

action in which the appointment of a receiver is sought …").  Therefore, the Court looks to the

general body of federal law.  In that regard, a "receiver is a neutral court officer appointed by the

court, usually to 'take control, custody, or management of property that is involved in or is likely to

become involved in litigation for the purpose of ... undertaking any [ ] appropriate action.' " Sterling

v. Stewart, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998) (quoting 12 Charles Alan Wright, Arthur R.

Miller & Richard L. Marcus, Federal Practice and Procedure § 2981, at 5 (1973)).   The appointment

of a receiver is "an extraordinary equitable remedy. . . .  And equity intervenes only when there

is no remedy at law or the remedy is inadequate."  United States v. Bradley, 644 F.3d 1213, 1310

(11th Cir. 2011) (internal citation omitted).  "[T]he appointment of a receiver in equity is not a

substantive right; rather, it is an ancillary remedy which does not affect the ultimate outcome of the

action." National Partnership Inv. Corp., 153 F.3d at 1291.  Overall, the "decision to appoint a

receiver is an equitable one which rests 'in the sound discretion of the court.'" U.S. Bank

National Ass'n v. LG-328 Huntsville, AL, LLC, No. 5:17-CV-01378-AKK, 2017 WL 5668392,

at *1 (N.D. Ala. Nov. 27, 2017) (citation omitted).  To exercise that discretion, a receivership is

"justified only where there is a clear necessity to protect a party's interest in property, legal and less

_____

[4] Defendants reliance on Groh v. Halloran, 86 A.D.2d 30, 33–34, 448 N.Y.S.2d 680
(1982) is misplaced.  This state court decision has no precedential value.

drastic remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties". Netsphere, Inc. v. Baron, 703 F. 3d 296, 305 (5th Cir. 2012) (citations omitted). "Typically, the party seeking a receivership over certain property must 'show that he or she has some legally recognized right in that property that amounts to more than a mere claim against [the] defendant.'" U.S. Bank National Ass'n., 2017 WL 5668392, at *1 (citation omitted).

The parties do not dispute that BOKF, as the Indenture Trustee, has legally recognized rights in the property based upon the Bond Documents, which are more than merely a claim against Defendants. Here, the Facility and revenues stand as collateral and the revenues as a source of payments to the Bondholders.

As stated, the decision to appoint a receiver is an equitable one committed to the discretion of the Court. There are no specific or mandatory factors or criteria. Instead, the Court must weigh all relevant information. Thus, the Court considers the following non-exhaustive list of factors:

> (i) whether [the party] seeking the appointment has a valid claim; (ii) whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant; (iii) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (iv) whether legal remedies are inadequate; (v) the balance of harms as between the party seeking appointment of a receiver and those opposing it; (vi) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and (vii) whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership.

PNC Bank, N.A., 2014 WL 6065778, at *18-19 (quoting Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 844 (9th Cir. 2009)) (internal quotation marks omitted).

1) Whether BOKF, the Indenture Trustee, as the party seeking appointment, has a valid claim.

This factor weighs in favor appointing a receiver. The evidence and hearing testimony

indicates that Lessee Gordon Jensen and the Issuer Medical Clinic Board are in default under the terms of the Bond Documents and has failed to cure the default.

    2) <u>Whether there is fraudulent conduct or the probability of fraudulent conduct by Defendants</u>.

    Previously, allegations of fraud were made by the Securities and Exchange Commission against Christopher Brogdon, who has financial interests in the Lessee Gordon Jensen, the Facility, Knollwood, and Marsh Pointe.  Specifically, Brogdon, in connection with various retirement facility projects, is alleged to have commingled investor funds with his other businesses and then diverted investor money to pay personal expenses.  The fraud was alleged to have been conducted in part through the Facility at issue in this case.  <u>See Securities and Exchange Commission v. Brogdon</u>, Civil Action No. 2:15-cv-08173-KM-JBC (D. N.J. 2015) (Doc. 1, Complaint).  Defendant Brogdon and other defendants executed consents "without admitting or denying the allegations of the Complaint" with certain exceptions.  <u>Id</u>. (Doc. 543, Judgment).  In the judgment, the district court "permanently restrained and enjoined" Brogdon, from violating provisions of the Exchange Act and the Securities Act in "connection with the purchase or sale of any security" by employing "any device, scheme, or artifice to defraud" or "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." <u>Id</u>.

    BOKF alleges that Brogdon, through excessive management fees and loans, has continued to use the Facility to defraud investors.   BOKF's evidence in support does not reach the level to substantiate fraud.  However, as discussed *infra*, such evidence substantiates probable financial mismanagement of the Facility.

    3) <u>Whether the property is in imminent danger of being lost, concealed, injured,</u>

diminished in value, or squandered.

This factor weighs favor of appointing a receiver.   On the positive side, the Facility is licensed and insured and recently received a new roof and air conditioning unit as well as other improvements.  Also, it appears Conquest's operational management of the Facility has, since July 2020, effectively protected the residents from Covid 19 and resulted in an occupancy rate of approximately 90%, despite the pandemic.  However, the testimony indicates that Conquest's manager is isolated from the financial decisions, thus crippling his ability to manage the Facility as a whole.

Overall, the testimony and evidence show substantial issues with the financial management of the Facility, which endanger the revenues.  First, the Facility has contracted to pay management fees to three companies; Conquest (3%), Synergy Health Care Associates, LLC (2.5%) and Marsh Pointe (5%). Marsh Pointe is owned and controlled by Brogdon. Comparison of the management agreements between the Facility operator Knollwood and Marsh Pointe and between Knollwood and Conquest indicate almost identical duplication of duties.  Additionally, the accounting firm Synergy performs financial duties that are included in the management agreements with Conquest and Marsh Pointe.

The Defendants response to the duplication was simply that BOKF didn't prove that the fees were actually paid to all three entities.  The Defendants are correct.  However, the fault for the lack of evidence is due to Defendants failure to provide financial records which detail to whom management fees were paid.  Instead, debits for administrative costs are lumped together. But it was deduced that approximately $35,000 per month is spent on management fees. BOKF's witness, the proposed Receiver, testified that one management company could perform these tasks, that 5% is a customary fee for this type of service, and that the rate could be reduced

to $23,000 to $25,000 per month.  The Court credits this testimony and finds that Evidence that overpayment of financial management fees depletes revenue that should be used to pay the Bondholders or the Lease payments.  It is also troubling that these excess fees appear to be paid to Marsh Pointe.  Gordon Jensen, Marsh Pointe and Knollwood are all controlled and/or owned by Brogdon.

Additionally, Defendant Knollwood, the operator of the Facility loaned approximately $400,000 to Marsh Pointe. The debt appears to have been reduced to approximately $200,000. However, the unstable financial situation of the apparent principal owner of Marsh Pointe, Brogdon, as a result of the SEC judgment and civil penalty in excess of $48 million, creates a risk that additional funds from Knollwood could be drawn off to the detriment of the Bondholders and BOKF as Indenture Trustee.

The evidence also indicates that the Facility is paying excessive labor costs.  BOKF's witness, the proposed Receiver, testified that following a five-year analysis of labor expenses and comparing the expenses with competitors (who maintained a higher CMS rating[5] with less labor costs), an average of $829,325.80 was overspent, and in 2019 in excess of $1 million was overspent. BOKF's appraiser reached substantially the same conclusion.  The proposed Receiver testified that these labor costs could be reduced by $600,000, without reduction in employees that provide direct care to the residents.

4) <u>Whether legal remedies are inadequate</u>.

This factor weighs in favor of appointing a receiver.  The parties have not presented a

---

[5] The Facility received a rating of 1 out of 5 by the Center for Medicare and Medicaid Services.  The evidence indicates that a low rating affects the Facility's ability to produce revenue because hospitals many not contract with a low-rated facility and more lucrative private pay and Medicare residents many not use the facility.

legal remedy that would provide for immediate control of the Facility for the purpose of securing the collateral for the Bondholders.

5) <u>The balance of harms as between BOKF, as the party seeking appointment of a receiver, and Defendants who oppose the appointment.</u>

This factor weighs in favor of appointing a receiver. The Bondholders interests are substantially under-secured. BOKF's appraiser testified that the value of the Facility was $4.2 million as of August 2020, and $4.7 million as of August 2021. The evidence also shows that the indebtedness due under the Bond Documents is greater than $10.1 million. Even should the Court consider Defendants' position that the appraisal is incorrect and that the property tax assessor's records show a value of approximately $6.7 million (doc. 39, p. 6), the debt still greatly exceeds the value of the collateral. Also, as discussed in more detail in section 3, the revenues of the Facility, which are also collateral for the Bond Documents, are at risk.

6) <u>BOKF's probable success in the action and the possibility of irreparable injury to BOKF's interest in the property.</u>

This factor weighs in favor of appointing a receiver. As previously stated, BOKF as Indenture Trustee has a valid claim against the Defendants due to the events of default under the terms of the Bond Documents. Therefore, BOKF has shown probable success in the action.

Irreparable injury is possible. Primarily, the potential loss of revenue which current management would pay as redundant management fees and excessive labor costs, as well as the potential risk for revenues to be diverted by way of loans. Even if BOKF successfully obtains a judgment, these revenues will likely never be recovered.

7) <u>Whether BOKF's interests sought to be protected will in fact be well-served by receivership.</u>

This factor weighs in favor of appointing a receiver.  BOKF seeks to protect the interests of the Bondholders to obtain payment under the terms of the Indenture.  At present, with the Defendants in control of the Facility, the lease payments have not been made since 2018.  At this point, a receivership, even with its attendant costs and expenses, would better protect the Bondholders interest in obtaining payment.  Although Defendants assert that appointment of a receiver would be detrimental to the residents, the proposed receiver has substantial experience in nursing home operations. Therefore, the care of the residents should not be adversely affected by this change in management.

As a final factor, the Mortgage and Security Deed provides for the appointment of a receiver, as follows:

> 2.05 <u>Receiver</u>. If an Event of Default shall have occurred and be continuing, Trustee upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right…to the appointment of a receiver to take possession of and to operate the Facility and to collect and apply the rents, issues, profits and revenues thereof.

(Doc. 1, p. 177).   Section 6.2(b) of the Lease Agreement also provides that BOKF, as the Trustee "may take whatever action at law or in equity may appear necessary or desirable to collect any sums then due and thereafter to become due hereunder or to enforce performance and the observance of any agreement of the Lessee hereunder." (Doc.1, p. 145).  Additionally, Section 905 of the Indenture provides as follows:

> <u>Appointment of Receivers</u>. Upon the occurrence of an Event of Default and upon the filing of a suit or other commencement of judicial proceedings to enforce the rights and remedies of the Trustee and of the Bondholders hereunder, the Trustee shall be entitled, as a matter of right to the appointment of a receiver or receivers of the Trust Estate, pending such proceedings, with such powers as the court making such appointment shall confer.

(Doc. 1, p. 81).

However, "contractual consent to the appointment of a receiver is not dispositive of the

issue, but serves only as a non-dispositive factor—albeit one to be given substantial weight—in the equitable analysis." Bank of Hope v. Dayk Enterprises, Inc., No. 2:20-CV-155-MHT-SRW, 2020 WL 8254488, at *3 (M.D. Ala. Dec. 4, 2020), report and recommendation adopted, No. 2:20CV155-MHT, 2021 WL 218730 (M.D. Ala. Jan. 21, 2021) (citation omitted); PNC Bank, N.A. v. Presbyterian Retirement Corp., Inc., No. 1:14-CV-00461-WS-C, 2014 WL 6065778, at *4 (S.D. Ala. 2014) (analyzing cases and concluding that "the existence of the § 8.03 consent provision in the Mortgage is properly viewed as no more than a non-dispositive factor in the equitable analysis, albeit one that should be afforded substantial weight."). Accordingly, the Court finds that this factor weighs substantially in favor of appointing a receiver.

Weighing the relevant factors as discussed above, and giving substantial weight to the contractual provision, the Court finds that the factors weigh in favor of appointing a receiver, and that BOKF has met its burden to show that appointment of a receiver is clearly necessary to protect its interest in the property. Netsphere, Inc., 703 F. 3d at 305.

F. Defense of unclean hands

As an additional ground for denying the equitable remedy of the appointment of a receiver, Defendants argue that BOKF has unclean hands. Defendants point to BOKF's payment of approximately $1.6 million in fines and disgorgement for the conduct of its employee in relation to the alleged fraud scheme for which the SEC filed suit against Brogdon. However, BOKF did not file this action in its individual capacity. BOKF sues as the Indenture Trustee for the benefit of the Bondholders. Defendants have not argued that the Bondholders have unclean hands or indicated that their right to equitable relief is forfeited by the conduct of BOKF's employee. The Court finds no merit in Defendants' argument.

G.  Consideration of less drastic equitable remedy

 Defendants request the Court appoint an examiner as a less drastic remedy.   Defendants argue that appointment of an examiner with "authority to investigate any payment to Marsh Pointe or its owner that exceed contractual management fees or proper reimbursements" along with an order preventing Knollwood from paying or lending funds to Marsh Pointe, would be sufficient.   However, this proposal fails to address substantial issues with the financial management of the Facility, i.e. redundant management fees, excessive labor costs and the failure to meet financial obligations on the Bonds.  Moreover, it also fails to address what appears to be the underlying problem; the financial management of the Facility continues to be controlled by Brogdon and Brogdon continues to commingle assets of various entities that he controls, including the Facility's assets.

H. Injunctive Relief

The same factors support the grant of a preliminary injunction to prevent Defendants from interfering with the receiver that is appointed and requiring Defendants to cooperate with the receiver. Overall, BOKF, the Indenture Trustee has a high likelihood of success on the merits, BOKF faces a risk of irreparable harm if an injunction is not granted, the balance of the equities favors BOKF, and an injunction preventing Defendants from disregarding court orders concerning the receiver is in the public interest. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (listing the elements for injunctive relief).

I. Appointment of the Receiver and Financing the Receiver

The Court finds that Derek Pierce has the necessary experience and competence to manage the Facility.  Moreover, the Mortgage contemplates BOKF, the Indenture Trustee, financing the receiver's fees and expenses until those costs can be repaid by the Facility's

revenues. See Mortgage at Section 2.04. (doc. 1, p. 177).  Accordingly, BOKF may provide such financing here.

    J. Order

    Based upon the foregoing findings and conclusions, the Request to appoint an examiner is DENIED, and the Motion for appointment of a receiver is GRANTED.


    Accordingly, it is ORDERED that:

    1. Derek Pierce of Healthcare Management Partners, LLC is appointed as the Receiver over the Receivership Estate (as defined below).

    2. The Receiver shall serve as an officer of this Court and his duty upon his appointment is to take possession of the assets of Gordon Jensen Health Care Association, Inc. for this Court and to preserve those assets so that upon distribution of the assets to the creditors they will be fully available to pay the claims of the creditors.

    3. Within five days of the date of this Order, the Receiver shall obtain and file with the Clerk of the Court a surety bond in the amount of $50,000.00 to be provided by a corporate surety, guaranteeing performance by him of the duties and obligations of his office of receivership, the bond to be payable to this Court for loss due to the acts of all agents, servants, or employees of the Receiver, and provide this Court with his written acceptance to faithfully perform the Receiver's duties as set forth in this Order.

The Receivership Estate

    4. Upon entry of this Order and the Receiver's acceptance of his appointment as receiver of the Receivership Estate (as defined below) and posting of the required bond, the Receiver is directed and empowered to take from Gordon Jensen Health Care Association, Inc., as the

Lessee, all rights and powers of Gordon Jensen Health Care Association, Inc., Knollwood NH, LLC, and Conquest Health Systems, LLC with respect to the Facility, and its administration and operation, including:

i. the Collateral;

ii. any and all real or personal property used in or related to the maintenance and operation of the Facility, including but not limited to all equipment, fixtures, machinery, motor vehicles, automobiles, trucks, other rolling stock, leasehold improvements, construction work in progress, supplies, raw materials, inventory, goods, work in process, parts, computers, computer software (including all licenses, leases, documentation, and source codes with respect to the computer software), telecommunication systems, fixtures, furniture, furnishings, office equipment, all tangible property furnished by or used in connection with the Facility, as well as all rights, easements, and franchises appurtenant thereto (collectively, the "Physical Assets");

iii. any and all cash, cash equivalents, bank accounts, deposit accounts, credits, prepaid expenses, deposits, deferred charges, advance payments, security deposits, prepaid items, funds, securities, investment accounts, accounts receivable, notes, notes receivable, mortgages, security interests, income, revenues derived from the Facility, insurance claims, insurance proceeds, any and all civil claims, whether actual, contingent, or otherwise, and any and all other rights to receive payments and/or property used in, generated from, or related to the administration, maintenance, and operation of the Facility as well as all rights, interests, licenses, provider numbers, and franchises related thereto (collectively, the "Cash Equivalent Assets");

iv. any and all records, documents, accounting records, contracts, and operating data and/or electronically stored information (including any and all computer operating systems in which such information is or may be stored) relating to the operation and management of the Facility and the Collateral that is in the possession, custody, or control of Gordon Jensen Health Care Association, Inc. (collectively, the "Books and Records");

v. any and all contracts, licenses, licensed nursing home beds/units, assisted living beds/units, provider agreements and permits affecting, or related to, the Facility or its operation (collectively, the "Contracts and Licenses"); and

15

vi. any and all of the internet domain names, post office box numbers, telephone and facsimile numbers, and any and all other listings and numbers used by Gordon Jensen Health Care Association, Inc. in connection with the operation and management of the Facility (collectively, the "Contact Information Assets"; and together with the Collateral, Physical Assets, Cash Equivalent Assets, Books and Records, and Contracts and Licenses, the "Receivership Estate").

5. Gordon Jensen Health Care Association, Inc., Knollwood NH, LLC, Conquest Health Systems, LLC and their successors, assigns, agents, officers, directors, stockholders, members, managers, employees, attorneys, accountants, anyone acting for or in concert with Gordon Jensen Health Care Association, Inc., Knollwood NH, LLC, Conquest Health Systems, LLC, and any persons or entities, including banks, financial or depository institutions, receiving notice of this Order and having possession or control of the Collateral, Books and Records, Cash Equivalent Assets, Contracts, Licenses, Contact Information Assets, the Facility, and/or any and all Physical Assets are hereby ordered to immediately deliver over to the Receiver: (1) full access to all Books and Records; (2) full and exclusive control over any and all Cash Equivalent Assets (including any information required by a bank or financial or depository institution to enable the Receiver to take exclusive control over any and all Cash Equivalent Assets), Contracts and Licenses, and Contact Information Assets; and (3) full access to and exclusive control over any and all Physical Assets.  Notwithstanding anything to the contrary in this Order, the Trustee shall continue to administer and control all funds and accounts established under Article V of the Indenture pursuant to the terms of the Bond Documents.

The Receiver's Authority and Power

6. Upon the acceptance by the Receiver of his appointment pursuant to this Order, the Receiver is granted the full power and authority to control, manage, administer, operate, and protect the Receivership Estate, and is hereby specifically vested with all statutory and common

law powers, rights, and privileges of a receiver necessary to accomplish the purpose of this receivership.

7. The Receiver is to operate and administer the Receivership Estate in an economical and efficient manner in compliance with the terms and conditions of the Bond Documents and applicable law. The Receiver is hereby authorized and directed to recover, collect, operate, maintain, preserve, and manage the Receivership Estate in the best interests of the Receivership Estate's creditors, and to take all action deemed reasonable and necessary to ensure compliance with all applicable requirements imposed by local, state, or federal law, and regulations promulgated by the State of Alabama, including, but not limited to, those requirements relating to the health, welfare, and privacy rights of the residents of the Facility.

8. To that end, by this Order, the Court intends to give, and does hereby give, the Receiver the full power and authority to fulfill its obligations as Receiver of the Receivership Estate, including, but not limited to, the sole and exclusive right and authority to:

> i. take complete and exclusive possession, control, and custody of and to exclusively run, operate, administer, manage, and perform all acts necessary to operate the Receivership Estate in the ordinary course of business, in accordance with the provisions of the Bond Documents and applicable state and federal law, including but not limited to entering into, modifying, and administering contracts and agreements for the provision of accommodations and related services to current and prospective residents of the Facility;

> ii. take possession of all inventory, equipment, and improvements constituting the Facility, and all books, records, and personal property relating to the Facility, wherever located;

> iii. take possession of all bank accounts containing funds associated with the Facility, wherever located, and to open, transfer, and change all bank and trade accounts relating to the Facility and the Collateral, including accounts to which third-party payors make payment, so that all such accounts are in the name of the Receiver;

iv. conduct an inventory of all personal property included in the Facility;

v. exercise all rights as to ownership of the Facility subject to the limitations set forth herein;

vi. implement operational efficiencies and revenue enhancement programs;

vii. fix, charge, revise, raise, and maintain rates and charges for services furnished by the Receivership Estate;

viii. collect revenues derived from the Receivership Estate and apply those revenues to the expenses of operating and maintaining the Receivership Estate in such order and amount as the Receiver, in its business judgment, deems prudent and appropriate, with available resources then applied in such order as required under the Bond Documents;

ix. make any reasonable reductions or revisions in the Receivership Estate's operating expenses, whether or not in the ordinary course of business;

x. manage, operate, maintain, and otherwise control all of the Collateral as necessary to prevent diminution of the Collateral's value including, but not limited to: (a) the receipt, collection, possession, and preservation of all accounts, incomes, profits, rents, and revenues; (b) subject to available resources in the Receivership Estate, from the date of this Order, the payment of taxes, insurance, utility charges, and other expenses and costs incurred in managing and preserving the Facility and the Collateral, including any past due amounts necessary to restore services, coverage or good standing; (c) filing cost reports or other claims for payment, reimbursement, or otherwise; (d) making use of the Facility's Medicaid provider number, Medicare provider number, and any other such provider number, license or certification necessary for the continued operation of the Facility and collection of receivables in the ordinary course; and (e) exercising any intangible rights;

xi. receive, collect, take possession of, and preserve all accounts, incomes, profits, and other revenues generated from and by the Receivership Estate, subject to the requirements of the Bond Documents;

xii. terminate or modify any currently existing written or oral contract (other than the Bond Documents), with any and all damages arising therefrom to be paid with revenues derived from the Receivership Estate in such amounts and at such times as the Receiver deems prudent in his business judgment;

xiii. assume and assign any currently existing written or oral contracts in accordance with the terms of this Order;

xiv. enter into new contracts on behalf of the Receivership Estate for goods or services that the Receiver, in its business judgment, deems necessary or advisable for the operation of the Receivership Estate;

xv. file, investigate, institute, prosecute, defend, compromise, adjust, or intervene in any action or proceeding, legal, equitable, or otherwise, before this Court or any other court, agency, or tribunal, as the Receiver may deem, in its sole business judgment, to be necessary and proper for the protection, maintenance, enhancement, and/or preservation of the Receivership Estate, or to further the provisions of this Order;

xvi. investigate and determine the nature and extent of any and all prior expenditures that may have been improperly classified and take all reasonable and necessary action to have such expenses properly classified;

xvii. investigate and determine whether all revenues have been properly accounted for and to take all reasonable and necessary action to recover any and all revenues that have been diverted away from the Receivership Estate or otherwise improperly applied and/or handled;

xviii. institute, prosecute, defend, and settle such legal proceedings as the Receiver deems necessary relating to the recovery, collection, maintenance, protection, or proper care of the Receivership Estate, and to employ counsel therefore;

xix. hire, discharge, manage, and control such employees and/or staff at the Facility, except as prohibited by law, as the Receiver determines necessary or advisable;

xx. permit the Trustee and its respective agents and independent contractors and/or professionals to inspect fully the Facility, its accounts, and all books and records, including records as to the maintenance of any portion of the Facility, upon reasonable notice to the Receiver;

xxi. take all such actions and expend all such sums as may be necessary and prudent in the Receiver's business judgment to obtain, maintain in effect, restore, or transfer all Licenses, insurance, zoning approvals, provider numbers, and other

approvals in an effort to ensure that the Receivership Estate may continue to be used for its intended purpose;

xxii. enter into and/or terminate, modify, and renew contracts for any insurance with the same or different insurance providers that the Receiver believes, in its sole business judgment, is necessary or advisable for the continued operation of the Receivership Estate in the ordinary course of business as a going concern; xxiii. terminate or modify, as the Receiver deems prudent in the exercise of its business judgment, any business activities of, or services provided at or in connection with, the Receivership Estate;

xxiv. engage professionals in the ordinary course of the Facility's business, including, but not limited to, attorneys, accountants, communication consultants, investment bankers, consultants, brokers, forensic and investigative accountants, engineers, managers and any other service or health care providers (each a "Professional" or "Service Provider" as applicable) as the Receiver may, subject to the approval of the Trustee, deem necessary or advisable to assist the Receiver in the performance of its duties under this Order and agree to such terms (including financial terms) with respect to such engagements as the Receiver may deem necessary or advisable, without further order of this Court and with the reasonable fees and expenses of such Professionals and Service Providers to be payable on a current basis from the Receivership Estate as operating expenses, subject to the provisions of Paragraph xxx below;

xxv. comply with all requirements of all governmental authorities;

xxvi. change any and all locks on the Receivership Estate;

xxvii. generally, do, execute, and perform any other act, deed, matter, or thing whatsoever that the Receiver reasonably believes ought to be done, executed, and performed in and about, or with respect to, the Receivership Estate;

xxviii. take all actions necessary and appropriate to preserve, maintain, renew, and protect all contracts and licenses affecting, or related to, the Facility or its operation to the extent the Receiver in its sole discretion determines that the said contracts and licenses should be preserved, maintained, renewed, and protected, including making all necessary filings with the regulatory bodies and agencies with jurisdiction over the Facility;

xxix. execute such documents as are necessary to transfer all contracts and licenses

affecting, or related to, the Facility or its operation to any purchaser of the Facility, including a purchaser at a non-judicial foreclosure sale which may be conducted by the Trustee;

xxx. pay itself and any Professionals and/or Service Providers such fees (and reimburse such expenses) as are payable in accordance with the terms of this Order after the filing of a fee application;

xxxi. request and receive advances from the Trustee on terms mutually agreeable to the Trustee and the Receiver for expenses incurred by the Receiver relating to the care, preservation, and maintenance of the Receivership Estate. All advances made by the Trustee to the Receiver shall be deemed advances under and pursuant to the Bond Documents to protect and preserve the Trustee's interest in the Collateral, shall be secured by all of the Collateral, and shall have the same priority as the advance originally made pursuant to the terms of the Bond Documents. Alternatively, the Receiver may obtain advances from a third party lender for expenses incurred by the Receiver relating to the care, preservation, and maintenance of the Receivership Estate; provided, however, that any third party advance (and all rights of the third party lender) shall be subordinate in all respects to the Trustee's right to payment under the Bond Documents and the Trustee's interest in the Collateral, unless the Trustee agrees in writing to alternative treatment; and

xxxii. generally do, execute, and perform any other act, deed, matter, or thing whatsoever that the Receiver reasonably believes ought to be done, executed, and performed in and about, or with respect to, the Receivership Estate; provided, however, that notwithstanding the Receiver's power and authority to undertake any of the foregoing, the Receiver shall have no obligation to do so if the Receiver believes, in its sole business judgment, such action would not be in the best interest of the Receivership Estate or if the Receiver lacks the resources in the Receivership Estate to fund such action after payment of other expenses of the Receivership deemed by the Receiver to be more critical.

9. The Receiver shall have the power, in accordance with applicable law, to avoid fraudulent transfers or conveyances of any of the Facility's assets or fraudulent obligations incurred by Gordon Jensen Health Care Association, Inc. prior to the appointment of the Receiver.

10. The Receiver shall be bound by all applicable laws.

11. Subject to the entry of an order of the Court and with the consent of the Trustee, the Receiver shall have the power to market all or any part of the Receivership Estate for sale.

The Receiver Shall Have Exclusive Control Over the Receivership Estate
Without Interference

12. The Receiver shall have full and sole control over all of the Receivership Estate, including all authorizations or other documentation necessary or desirable for the Receiver to administer, maintain, and operate the Receivership Estate in accordance with applicable law.

13. Gordon Jensen Health Care Association, Inc. is hereby enjoined from administering, operating, directing, controlling or managing the business and affairs of the Receivership Estate, which authority has been vested solely and exclusively in the Receiver under this Order.

14. Unless otherwise approved or directed by the Receiver, all persons, firms, corporations, and associations in any way related to, linked to, or associated with Gordon Jensen Health Care Association, Inc., Knollwood NH, LLC, and Conquest Health Systems, LLC, along with their officers, directors, stockholders, members, managers, subscribers, agents, and all other persons in active concert or participation with them, are prohibited and enjoined from: (i) the transaction of further business with the Receivership Estate; (ii) the waste, transfer, or disposition of property of the Receivership Estate; (iii) doing any action or thing whatsoever to interfere with the taking control, possession, and administration by the Receiver of the Receivership Estate; (iv) interfering in any way with the exclusive jurisdiction of this Court over the Receivership Estate; (v) the institution or further prosecution of any action or proceedings against the Receiver, the Receivership Estate, or its assets, except before the Court; (vi) withholding from the Receiver books, accounts, documents, records, or any other part of the Receivership Estate relating to the business of the Receivership Estate; and (vii) any other

threatened or contemplated action that might lessen the value of the Receivership Estate, impede the Receiver's discharge of its duties, prejudice the rights of the Trustee or other creditors, or interfere with any proceeding initiated by the Receiver.

15. Gordon Jensen Health Care Association, Inc., Knollwood NH, LLC, and Conquest Health Systems, LLC, along with their agents, employees, officials, officers and successors and assigns, shall fully cooperate with the Receiver in all matters related to this Order and the operation and administration of the Receivership Estate, including but not limited to executing all documents, providing all authorizations, and taking any other action that the Receiver believes is necessary or desirable to facilitate the operation of the Receivership Estate or to exercise its powers as Receiver.

16. The Receiver's full and sole control of the Receivership Estate shall not in any way diminish the duties and cooperation required by Knollwood NH, LLC, Conquest Health Systems, LLC, and Gordon Jensen Health Care Association, Inc. under this Order.

17. Upon notice of this Order, any person or entity, bank, financial or depository institution, or any employee or agent of such person or entity, shall be deemed to be required to comply with all terms of this Order until this Court shall have relieved such person from the terms of this Order by subsequent order.

18. All civil legal proceedings of any nature related to any Receivership Property are stayed in their entirety and all courts having any jurisdiction thereof are enjoined from taking or permitting any action in connection with such proceeding until further Order of this Court.

The Receiver's Rights and Obligations

19. The Receiver and any other Professional or Service Provider engaged by the Receiver (collectively, the "Receiver Affiliates") shall owe duties only to the Receivership Estate and the

23

Court, but not to the Trustee, Gordon Jensen Health Care Association, Inc., Knollwood NH, LLC, Conquest Health Systems, LLC, or any other third party. The Receiver's retention of the law firm of Waller Lansden Dortch & Davis, LLP ("Waller") to assist and represent the Receiver is hereby approved. The Receiver is, without further approval of the Court, authorized to permit Conquest health Systems, LLC, the current management company, to continue to manage the Facility under the direction and supervision of the Receiver should it determine that it is in the best interests of the Receivership Estate.

20. Within forty-five (45) days after the date of entry of this Order and at least thirty (30) days prior to the expiration of the period covered by any budget acceptable to the Trustee pursuant to this paragraph, the Receiver shall deliver to the Trustee a proposed budget of anticipated income and expenses of the receivership for a period of not less than six (6) months. The Trustee shall have ten (10) business days after receipt of any proposed budget to either give the Receiver its written acceptance of the same or deliver its written disapproval, with specific objections noted in said disapproval. In the event that any budget is so disapproved by the Trustee, the Receiver will continue to work with the Trustee until an acceptable budget (the "Budget") is completed. If the Receiver and the Trustee do not agree to the Budget within sixty (60) days after the date of entry of this Order, the most recent Operating Budget approved by the Trustee, as that term is described in the Indenture and in Section 5.4 of the Lease Agreement, shall be the Budget until the Receiver and the Trustee agree otherwise. If the Receiver and the Trustee do not agree to the Budget for any subsequent six-month period after the initial six-month period, prior to the beginning of such period, the Budget for the preceding six months shall continue in effect until a Budget is accepted or approved by the Trustee for the remainder of the applicable six-month period. Once the Budget is accepted by the Trustee, the Receiver

shall deliver a copy of the Budget to Gordon Jensen Health Care Association, Inc. The Receiver and the Trustee may negotiate any amendments to the Budget which, as accepted by the Trustee, shall be collectively the Budget, however the Receiver need not seek approval for expenses in excess of amounts in the Budget which will result in a 15% or less variance from a budgeted item. Notwithstanding the Trustee's involvement in the creation or approval of the Budget, in no event is the Trustee obligated or required to fund proceeds for the operation and/or maintenance of the Facility. The development of the Budget shall solely be a matter for the Receiver and the Trustee, and the approval of the Budget shall be at the sole discretion of the Receiver and Trustee.

21. Within forty-five (45) days from the date of entry of this Order, and continuing each month thereafter, the Receiver shall also provide to the Trustee a report (the "Monthly Report") comparing the Receiver's actual revenue and expenditures against the budgeted revenue and expenditures, as detailed in the Budget. If so requested by the Trustee, the Receiver shall also deliver to the Trustee copies of all supporting bills and expenses for any and all expenses reflected on any given Monthly Report and shall also provide to the Trustee any other additional or relevant information obtained from time to time by the Receiver in connection with the Receivership Estate.

22. The Receiver shall have the right to pay the costs necessary to perform and complete any improvements, additions, changes, remediations, additions, or other capital expenditures of the Receivership Estate (the "Capex Expenses"), but only pursuant to a budget for such items approved by the Trustee in writing in advance (as the same may be amended from time to time in writing with the consent of the Trustee, the "Capex Budget").

23. The Receiver shall make an accounting and keep accurate records concerning the

Receivership Estate, including the actual revenues collected, any protective advances made by the Trustee to the Receivership Estate, and expenses paid each month, and make such records available to the Trustee, Gordon Jensen Health Care Association, Inc., and the Court during normal business hours and upon reasonable notice.

24. Within thirty (30) days of entry of this Receivership Order, Receiver shall request transfer of any state issued operating license(s) for the Facility from Gordon Jensen Health Care Association, Inc. (or whatever entity holds the operating license(s) for the Facility) to Healthcare Management Partners, LLC, as Receiver (or its designee). The discretion to transfer the operating license(s) for the Facility lies solely with the State of Alabama's regulatory authorities with jurisdiction over the Facility and the regulatory authorities' failure or refusal to transfer the license as requested by the Receiver shall not be grounds for setting aside this Receivership Order.

25. The Receiver shall permit the Trustee and its respective agents and independent contractors to inspect the Receivership Estate and the Receiver's records with respect to the Receivership Estate during normal business hours and upon reasonable notice.

26. The Receiver shall review whether the Receivership Estate is in compliance with the requirements established with respect to the tax-exempt status of the Bonds, as set forth in the Bond Documents and any related tax documentation executed in connection therewith that is made available to the Receiver, and, to the extent feasible, shall make reasonable efforts to regain or maintain compliance with such requirements.

27. The Receiver shall have the absolute right, but not the duty, to change any accounts or other investment funds in which the Cash Equivalent Assets are currently maintained to any other account or fund if such change is in compliance with the terms of the Bond Documents and

this Order.

28. The Receiver and Receiver Affiliates shall not have personal liability for any liabilities of the Receivership Estate or obligations incurred pursuant to the terms of this Order or any other order of this Court and, in the event any such liability or obligation is at any time asserted against the Receiver Affiliates, the Receiver may use revenues derived from the Receivership Estate to contest any such claimed liability and to pay, compromise, settle, or discharge such claimed liability on terms reasonably satisfactory to the Receiver, and such expenses shall constitute operating expenses of the Receivership Estate.

29. The Receiver and the Receiver Affiliates shall perform the duties and obligations imposed on them by this Order with reasonable diligence and care under the circumstances and neither the Receiver nor any of the Receiver Affiliates shall be personally liable to the Trustee, Gordon Jensen Health Care Association, Inc., or any third party except for such of their own acts as shall constitute fraudulent or willful misconduct as determined by a Final Order. For purposes of this Order, "Final Order" shall mean an order or judgment of this Court as to which: (a) the time to appeal, petition for certiorari, or file a motion for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for re-argument or rehearing shall then be pending; or (b) in the event that an appeal, writ for certiorari, re-argument, or rehearing has been sought, the time to take any further appeal, petition for certiorari, or request for re-argument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order, as long as such a motion has not actually been filed.

30. The Receiver and the Receiver Affiliates shall be defended, held harmless, and

indemnified from time to time by the Receivership Estate against any and all losses, claims, costs, expenses and liabilities (including legal fees, costs, and expenses), and any costs of defending any action, suit, proceeding, or investigation to which the Receiver or the Receiver Affiliates may be subject, by reason of their execution in good faith of their duties under this Order or any other order of this Court; provided, however, such indemnity shall be payable solely from the Receivership Estate.

31. At a reasonable expense to the Receivership Estate, the Receiver may obtain insurance against claims for liability, damages awards, and settlements for the benefit of the Receiver, the Receiver Affiliates, and the Receivership Estate.

32. Any actions or proceedings which involve the Receiver, any Receiver Affiliate, or the Receivership Estate or relating in any way to the Receivership Estate or the administration, operation or control of the Receivership Estate by the Receiver shall be filed in this Court, and no judgment of any party other than the Trustee shall be enforced against the Receivership Estate absent further order of this Court.

33. As an appointee of this Court, the Receiver and the Receiver Affiliates shall enjoy judicial immunity.

34. The Receivership Estate shall be subject to and liable for only such local, state, and federal taxes that accrue during the pendency of the Receivership and for which the Receivership Estate would have become liable when operated by Gordon Jensen Health Care Association, Inc.

35. Notwithstanding anything in this Order to the contrary, nothing contained in this Order shall be deemed to be either an assumption of liability by the Receiver or the Trustee, or a requirement that the Receiver or the Trustee fund the costs of this receivership or the operating expenses of the Facility, which costs and expenses shall be paid exclusively from the revenues

derived from the Facility and the Collateral and the assets comprising the Facility and the Collateral, which revenues and assets, including accounts and deposit accounts of Gordon Jensen Health Care Association, Inc. or proceeds from the sale of the Collateral, are vested in the Receiver pursuant to this Order.

Payment of Fees and Costs

36. The Receiver shall file applications for payment of the Receiver's and the Receiver Affiliates' fees and expenses on the twentieth (20th) day of each calendar month setting forth reasonably itemized time entries and expenses. Unless a party files a written objection to the application for payment within thirty (30) calendar days of the filing of the application for payment, the application shall be deemed approved and the Receiver is authorized to pay the fees and expenses of the Receiver and the Receiver Affiliates as necessary expenses of operation of the Facility without further order of the Court.

37. The Receiver's compensation for its services under this Order, may be up to $575/hour, as a Managing Director of HMP, plus the Receiver's reasonable and necessary out-of-pocket expenses directly related to the performance of the Receiver's duties under this Order, including, but not limited to, local housing, meals, travel, local transportation, and transportation to and from: (a) the primary residence of Receiver personnel providing services under this Order; (b) the Receiver's primary office; and (c) the Facility. The Receiver shall be permitted to utilize members of HMP when necessary, appropriate, and reasonable in the interests of economy at the following rates: Senior Director (up to $475/hour), Director (up to $425/hour), Senior Associate (up to $350/hour), Associate Accountant (up to $250/hour), and Data Analyst (up to $175/hour). **Notwithstanding this fee schedule, and in accordance with Pierce's testimony of what is a reasonable management fee, in no event shall the Receiver's compensation (and any**

**outsourced financial work) exceed 5% of the gross revenue.**

38. Fees and expenses payable to the Receiver and the Receiver Affiliates under this Order shall be treated as priority administrative claims against the Receivership Estate, and payment of such amounts in accordance with this order shall take priority over payment of any claims arising prior to the date on which the Receiver is appointed (including, but not limited to, claims of the Trustee with respect to the Bonds).

Administrative Matters

39. The Receiver may only be removed by order of this Court upon appropriate motion, notice, and hearing, after a showing of good cause by the Trustee or Gordon Jensen Health Care Association, Inc.

40. Within 14 days of the Receiver's acceptance of appointment, Gordon Jensen Health Care Association, Inc. shall provide the Receiver with a sworn statement listing: (a) the identity, location, and estimated value of all property, books, records, contracts, and other assets related to and/or appurtenant to the Facility; (b) the names, identities, and contact information (telephone, mailing address, and email address) of all employees, contractors, subcontractors, accountants, attorneys, other personnel, and any other agents providing goods or services to or in connection with the Facility; (c) a complete inventory of the Facility's assets and liabilities, including any ongoing litigation related to the Facility or its operations; and (d) copies of all contracts, licenses, agreements, and service agreements related to the Facility.

41. Starting thirty (30) days after entry of this Order, and within twenty (20) days after the end of each calendar month thereafter, the Receiver shall file with this Court monthly reports concerning the financial results of the operation of the Receivership Estate.

42. The Receiver may seek direction from this Court on any matter related to this Order,

including, but not limited to, relief from or modification of the provisions of this Order.

43. The Receiver may seek such other and further orders of this Court as it deems necessary or expedient to carry out its duties and responsibilities under this Order.

44. The Receiver may resign and be discharged of its responsibilities at any time by giving thirty (30) days' prior written notice to this Court; provided, however, that the Receiver may petition this Court to approve such resignation and discharge upon shorter notice for good cause shown.

45. At the completion of its duties set forth in this Order, or at such earlier time as the Receiver has determined that the purposes of this Order may no longer be effectively fulfilled by the Receiver, the Receiver may file a motion seeking to terminate its responsibilities as Receiver and the Court supervision of the Receivership Estate.

46. Upon the satisfaction and discharge of all indebtedness and obligations secured under the Bond Documents, the Court shall enter an Order, as appropriate, terminating the receivership.

47. As needed until the Receiver is fully ready to begin exercising his authorities and powers as set forth above, Gordon Jensen Health Care Association, Inc. shall avoid harm to the Receivership Estate and ensure the Receiver can carry out its responsibilities as required by this Order.

48. Gordon Jensen Health Care Association, Inc. and its successors, assigns, agents, employees, members, managers, attorneys, or anyone acting for or in concert with them shall be prohibited from: (i) possessing or managing the Facility (unless requested or approved by the Receiver) and from interfering in any way with the possession or management of the Facility by the Receiver; (ii) collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of the Collateral, including any revenues and profits derived therefrom, during and

pending the appointment of the Receiver; (iii) removing any property from the Facility and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operating of the Facility and other Collateral.

49. Further, Gordon Jensen Health Care Association, Inc. is required to pay to the Receiver any revenues and other cash collateral in their possession or control derived from the Facility and other Collateral, and are required to immediately pay and turn over to the Receiver and to perform all other acts necessary to transfer to the Receiver all funds on hand in cash and all funds held in deposit accounts for the benefit of the Facility or arising from the ownership, possession, or operating of the Facility and all accounts, accounts receivable, and any other collectibles, and all keys, books, records, equipment, and all things in any manner related to the ownership, possession, or operation of the Facility. For the avoidance of doubt, and notwithstanding anything to the contrary in this Order, the Trustee shall continue to administer and control all funds and accounts established under Article V of the Indenture pursuant to the terms of the Bond Documents.

50. Further, Gordon Jensen Health Care Association, Inc. and any other party with notice of this Court's order, is prohibited from prosecuting any claim against the Receiver or the Collateral, other than in this action and only after a proper motion is filed and an order entered allowing such party to file such a claim herein.

51. All provisions of this Order notwithstanding, this Order shall not provide a basis for exculpation to any person or entity for the liability, obligations, or the like of such person or entity arising out of gross negligence, willful misconduct, bad faith, or fraud.

52. Gordon Jensen Health Care Association, Inc. shall be entitled to notice of any pleading, motion, notice, or the like filed with the Court.

Effect of Order and Jurisdiction

53. Except as expressly set forth in this Order, the terms and conditions of the Bond Documents and any documents related to the Bond Documents, including the rights, property, powers, authority, and assets conferred in such documents, remain in full force and effect.

54. Except as expressly set forth in this Order, nothing in this Order shall act to divest in any way the Trustee of any collateral, property, or asset under the control of the Trustee or enjoin or otherwise prohibit the Trustee from pursuing any other remedies as provided in the Bond Documents. All of the Trustee's claims and causes of action against Gordon Jensen Health Care Association, Inc., Medical Clinic Board of the City of Mobile (Second), Knollwood NH, LLC, and Conquest Health Systems, LLC shall be preserved and shall not be deemed waived, compromised, released, or prejudiced in any way by this receivership proceeding. This receivership proceeding shall not bar or preclude the Trustee, under the doctrines of collateral estoppel, res judicata, or any other doctrine or preclusion, from asserting or maintaining any claims or causes of action against Gordon Jensen Health Care Association, Inc., Medical Clinic Board of the City of Mobile (Second), Knollwood NH, LLC, or Conquest Health Systems, LLC, including, but not limited to, any claims or causes of action for recovery of amounts owed under the Bond Documents or proceedings by foreclosure, either non-judicial or judicial, or otherwise to sell the Collateral or any portion of the Collateral.

55. Until the Receiver is discharged and this receivership is terminated, the Court retains jurisdiction over this matter to: (i) amend, supplement, or delete any provision of this Order; (ii) enforce compliance with or to punish violations of this Order; and (iii) order any additional actions or remedies as may be appropriate or reasonably necessary.

56. The reversal or modification on appeal of this Order shall not affect the validity of

any actions taken in good faith by the Receiver, the payment of compensation to which the Receiver or the Receiver Affiliates are entitled, or the payment of expenses incurred by the Receiver or the Receiver Affiliates pursuant to this Order.

57. This Order shall be immediately effective upon its entry and shall continue until further order of this Court.

DONE and ORDERED this the 15th th day of March 2021.

**/s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**