## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| BOKF, N.A., AS INDENTURE TRUSTEE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **GORDON JENSEN HEALTH CARE** | ) |
| **ASSOCATION, INC., KNOLLWOOD NH,** | ) |
| **LLC, CONQUEST HEALTH SYSTEMS,** | ) |
| **LLC, AND THE MEDICAL CLINIC** | ) |
| **BOARD OF THE CITY OF MOBILE** | ) |
| **(SECOND),** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

Civil Action No:  **1:21-cv-00031-KD-B**

### RESPONSE TO MOTION OF GORDON JENSEN HEALTH CARE ASSOCIATION, INC. TO APPROVE PROTOCOL FOR CONCURRENT ADMINISTRATION OF RECEIVERSHIP AND GORDON JENSEN HEALTH CARE ASSOCATION, INC. BANKRUPTCY CASE

Plaintiff BOKF, N.A. [1] ("BOKF"), acting in its capacity as Indenture Trustee on behalf of

the Bondholders,[2] submits this *Response to Motion of Gordon Jensen Health Care Association,*

*Inc. to Approve Protocol for Concurrent Administration of Receivership and Gordon Jensen*

*Health Care Association, Inc. Bankruptcy Case*, showing the Court as follows:

## I.      Introduction

On March 15, 2021, this Court appointed Mr. Derek Pierce to serve as Receiver over the

Receivership Estate, primarily the Knollwood skilled nursing facility (the "Knollwood Facility").

---

[1] At all times referenced herein, the use of "BOKF, N.A." or "BOKF" shall be intended to refer to its role as Indenture Trustee acting solely on behalf of the Bondholders under that certain Trust Indenture dated as of September 1, 2013, by and between the Medical Clinic Board of the City of Mobile (Second) and BOKF, N.A.

[2] Unless otherwise noted, all capitalized terms shall have the same meaning as in the Court's Order Appointing Receiver (Doc. 43).

As part of the order appointing Mr. Pierce as Receiver, the Court granted Mr. Pierce the power to sell, with the Court's approval and with BOKF's consent, "all or any part of the Receivership Estate." Order Appointing Receiver, Doc. 43, at 22. Also in that order, the Court rejected Defendants' proposition that this Court order the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") to appoint an examiner. *See id.* at 13.

Now, Gordon Jensen Health Care Association, Inc. ("Gordon Jensen") again seeks to combine this case and Gordon Jensen's bankruptcy case. In its motion (Doc. 61), Gordon Jensen has proposed a convoluted and jurisdictionally dubious arrangement whereby this Court and the Bankruptcy Court would share responsibility.  Gordon Jensen's proposal is unnecessary, wasteful, and unsupported by law. The Court should deny the motion.

## II.    Background

Gordon Jensen filed its petition initiating a Chapter 11 case in the Bankruptcy Court on February 1, 2020, after BOKF threatened to seek appointment of a receiver over the Knollwood Facility. On August 28, 2020, Gordon Jensen filed a proposed *Chapter 11 Plan* and *Disclosure Statement*. The proposal was for a liquidation plan whereby Gordon Jensen would sell its interest in the Knollwood Facility and distribute the proceeds.  Because BOKF was a first-priority secured creditor, and because the Knollwood Facility's value was substantially below the debt owed to BOKF, the Disclosure Statement acknowledged BOKF would "likely receive all post-closing proceeds from the sale of" the Knollwood Facility. Disclosure Statement, Bankr. Doc. 56, at 2.[3]

On October 2, 2020, BOKF filed a motion in the Bankruptcy Court requesting dismissal, relief from the stay, or appointment of a Chapter 11 trustee. That motion was set for an evidentiary hearing on December 10, 2020. However, before the motion was heard, Gordon Jensen's counsel

---

[3] Citations to "Bankr. Doc." are to the docket of case 20-61915-BEM in the Bankruptcy Court.

informed BOKF's counsel and the Bankruptcy Court that Gordon Jensen did not oppose BOKF's request to dismiss the case and requested the hearing be converted to a status conference. Accordingly, the Bankruptcy Court held a telephonic status conference on December 10, 2020.

At that conference, BOKF requested the Bankruptcy Court grant it relief from the automatic stay to seek appointment of a receiver rather than dismiss the case. That way, Gordon Jensen would remain accountable to the Bankruptcy Court until a receiver could be appointed. This would ensure someone had oversight over the Knollwood Facility and its patients. Once a receiver was appointed, the case could be dismissed.

Gordon Jensen's counsel opposed this arrangement, insisting there was "no need to keep these cases open." Transcript of December 10th Status Conference, attached hereto as **Exhibit A**, at 28:10-11.[4] Concerning the Knollwood Facility and its sister facilities, the Gordon Oaks Assisted and Independent Living Facilities, Gordon Jensen's counsel acknowledged "there's never been any dispute that these properties are deeply underwater and have no equity." *Id.* at 14:25-15:1. Responding to the Bankruptcy Court's suggestion that appointment of a Chapter 11 trustee could be appropriate, Gordon Jensen's counsel responded, "There are no assets." *Id.* at 25:12.

After hearing from both parties, the Bankruptcy Court concluded, "there's not equity in the property held by the Indenture Trustee's interest, there is concern about making sure that patients are cared for, [and] that dismissal may make some sense, shortly. But I am not willing to dismiss the cases today." *Id.* at 28:19-23. Accordingly, the Bankruptcy Court stated its intention to grant BOKF relief from the stay to seek appointment of a receiver, noting for Gordon Jensen's counsel that if, after BOKF had an opportunity to seek appointment of a receiver, "everything is running

---

[4] References to "cases" in the transcript are to Gordon Jensen's bankruptcy case, 20-61915-BEM, and the related case of Bama Oaks Retirement, LLC, 20-61914-BEM.

exactly how it should be, and the patients are truly being taken care of, and everything is being complied with" then dismissal could be appropriate. *See id.* at 28:24-29:9. On December 17, 2020, the Bankruptcy Court entered an order granting BOKF relief from the automatic stay to seek appointment of a receiver. Order, Bankr. Doc. 74.

BOKF filed its complaint and an emergency motion seeking appointment of a receiver in this Court on January 15, 2021. The Court held a hearing on the motion for appointment of a receiver over three days in mid-February and requested post-hearing briefing.  In their post-hearing submission to the Court, Defendants, including Gordon Jensen, suggested the Court order the Bankruptcy Court to appoint an examiner, rather than the Court appoint a receiver.

On March 15, 2021, the Court entered its Order Appointing Receiver (Doc. 43). The Court rejected Defendants' request for appointment of an examiner as insufficient to address the issues at the Knollwood Facility. The Court's order granted the Receiver, Mr. Pierce, authority to market and sell any part of the Receivership Estate, with the Court's and BOKF's approval. And the Court found "the debt…greatly exceeds the value of the collateral." Doc. 43 at 10.

Pierce has now assumed his role as the Receiver and is operating the Knollwood Facility. On May 10, 2021, the Receiver filed a *Motion to Approve (I) Proposed Claims Verification Procedures, (II) Claims Bar Date, and (III) Proposed Claims Distribution Method (Skilled Nursing Facility)* (Doc. 58). In that motion, the Receiver requested approval of a process whereby creditors, including the parties in interest in Gordon Jensen's bankruptcy case, could submit claims, lodge objections to any claims, and have claims paid out from the Receivership Estate as appropriate and where funds are available. The Receiver's proposal contemplates all known creditors receiving notice and a claim form in addition to publication notice. The Receiver's process promotes transparency and efficiency in the Receivership.

On May 19, 2021, BOKF filed a *Renewed Motion to Dismiss* in the Bankruptcy Court (Bankr. Doc. 94). In that motion, BOKF notes that a receiver is in place, there is no further need for the Bankruptcy Court to retain oversight over Gordon Jensen, and the Bankruptcy Court can dismiss the case, just as Gordon Jensen requested in December 2020. That motion, along with Gordon Jensen's "concurrent jurisdiction" motion filed in the Bankruptcy Court, is set for hearing on June 17, 2021.

The day before BOKF filed its *Renewed Motion to Dismiss*, Gordon Jensen filed its motion seeking approval of its plan for this Court and the Bankruptcy Court to have "concurrent jurisdiction." That motion should be denied.

## III.    Argument and Citation of Authority

Given the complete lack of authority for the procedure Gordon Jensen proposes, the impending dismissal of the bankruptcy case, the efficient and reasonable procedures proposed by the Receiver, and the lack of equity in the Knollwood Facility, the Court should deny Gordon Jensen's motion.

To begin with, Gordon Jensen does not cite a single authority supporting the relief it seeks. Instead, the motion is a compilation of bald, conclusory statements. That lack of citation is sufficient for the Court to deny the motion. *See* S.D. Ala. Civil L.R. 7(a) ("Every motion must state the statute, rule, or legal or equitable principle pursuant to which it is made."). Moreover, a review of relevant authority reveals the motion is baseless. Gordon Jensen asserts that due process would require the Receiver, before exercising the authority this Court granted him to market and sell assets of the Receivership Estate, to seek approval from the Bankruptcy Court. That cannot be the case.  The Receiver is an extension of this Court, and his power is an exercise of this Court's equitable authority. *See SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1343-44 (11th Cir. 2017). The Bankruptcy Court granted BOKF relief from the stay to seek appointment of a receiver by this

Court, and that necessarily means this Court could appoint a receiver with all the powers this Court chose to give it. Having lifted the stay, the Bankruptcy Court has no authority to constrain this Court's "broad powers and wide discretion to determine relief in an equity receivership." *Id.* The Bankruptcy Court cannot, and should not, interfere with the administration of the Receivership.

And in any event, dismissal of the bankruptcy case is all but accomplished. Gordon Jensen wanted the case dismissed back in December. Now, for whatever reason, it suits Gordon Jensen's fancy to propose instead a convoluted scheme requiring the bankruptcy case to stay open. Despite that flip, the bankruptcy case is eminently dismissible. As BOKF has argued, and will argue at the hearing in the Bankruptcy Court on June 17, 2021, Gordon Jensen's bankruptcy case was filed in bad faith, is being prosecuted in bad faith, and is a two-party dispute that does not need to remain in bankruptcy. This Court has found, and it is undisputed, that there is no equity, by a large margin, in the Knollwood Facility, which is the Receivership Estate's (and the bankruptcy estate's) largest asset. All that remains to be resolved is how much BOKF can recover for the benefit of the Bondholders. There is no equity above BOKF's claim for distribution to other creditors. BOKF is confident the Bankruptcy Court will recognize that and dismiss the bankruptcy case, and there will be no bankruptcy case in which to apply Gordon Jensen's tangled procedures.[5]

Furthermore, the Receiver has proposed a process for claims administration in the Receivership that is workable, transparent, and easily satisfies any due process concerns. Gordon Jensen suggests referral to the Bankruptcy Court is necessary to avoid confusing creditors, but the Receiver's proposal contemplates providing creditors with notice, a claims form, and an opportunity to object. Gordon Jensen's proposal is much more likely to confuse creditors, as it

---

[5] At the least, BOKF requests the Court refrain from ruling on Bama Oaks' motion until after the Bankruptcy Court resolves BOKF's *Renewed Motion to Dismiss*.

requires duplicative orders entered by this Court and the Bankruptcy Court to be volleyed back and forth in a game of judicial tennis. This Court has the power to approve the Receiver's proposed claims process, *see Wells Fargo Bank, N.A.*, 848 F.3d at 1344, and it should approve the Receiver's process rather than the byzantine protocol in Gordon Jensen's motion.[6]

Finally, Gordon Jensen supports its plan on the assertion that there needs to be a process for distributing the net proceeds of any sale. As explained above, there is no equity in the Knollwood Facility for distribution. That fact has been shown by BOKF, acknowledged by Gordon Jensen, and found by the Bankruptcy Court and this Court. If by some stroke of providence any sale does result in net proceeds, the Receiver's proposed claims administration procedure is sufficient to address their distribution.

## IV.   Conclusion

In accordance with the foregoing, the Court should deny Gordon Jensen's motion.

Respectfully submitted this 28th day of May, 2021.

*/s/ Walter E. Jones*
Walter E. Jones, GBN 163287
*Admitted Pro Hac Vice*
Patrick N. Silloway, GBN 971966
*Admitted Pro Hac Vice*

**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Boulevard, NW, Suite 700
Atlanta, Georgia 30309
Telephone: (404) 962-3544
Facsimile: (404) 786-2743
wjones@balch.com
psilloway@balch.com

---

[6] Furthermore, as discussed in the Receiver's *Response in Opposition to Motions Seeking Approval of Protocols for Concurrent Administration of Receivership and Bankruptcy Cases*, this Court has the ability to approve sales "free and clear" of liens in a receivership, so deferral to the Bankruptcy Court would not provide any benefit to the Receivership Estate.  Doc. No. 67 at 9-10.

W. Joseph McCorkle, Jr., ASB-3914-O65W
**BALCH & BINGHAM LLP**
P.O. Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
jmccorkle@balch.com

Frederic Dorwart, OBA No. 2436
*Admitted Pro Hac Vice*
James A. Higgins, OBA No. 18570
*Admitted Pro Hac Vice*
Nora R. O'Neill, OBA No. 19901
*Admitted Pro Hac Vice*
**FREDERIC DORWART, LAWYERS**
124 East Fourth Street
Tulsa, Oklahoma 74103
Telephone: (918) 583-9922
Facsimile: (918) 583-8251
fdorwart@fdlaw.com
jhiggins@fdlaw.com
noneill@fdlaw.com

*Attorneys for Plaintiff BOKF, N.A.,*
*as indenture trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **RESPONSE TO MOTION OF GORDON JENSEN HEALTH CARE ASSOCIATION, INC. TO APPROVE PROTOCOL FOR CONCURRENT ADMINISTRATION OF RECEIVERSHIP AND GORDON JENSEN HEALTH CARE ASSOCATION, INC. BANKRUPTCY CASE** with the Clerk of the Court using the CM/ECF system and service will be perfected upon any CM/ECF participants electronically and/or that I have mailed by United States Postal Service a copy of the foregoing document to any non-CM/ECF participants this the 28th day of May, 2021:

Thomas R. Boller
Mary Allie E. Boller
Thomas R. Boller, P.C.
150 Government Street, Suite 1001
Mobile, Alabama 36602

The Medical Clinic Board of the City of Mobile (Second)
c/o Michael M. Linder, Jr.
The Atchison Firm, P.C.
3030 Knollwood Drive
Mobile, Alabama 36693

/s/ Walter E. Jones
WALTER E. JONES

# EXHIBIT A

Page 1

1            IN THE UNITED STATES BANKRUPTCY COURT

2                NORTHERN DISTRICT OF GEORGIA

3                     ATLANTA DIVISION

4    IN RE:                        .

5                                  .  Docket Nos. 20-61914

6    BAMA OAKS RETIREMENT AND      .  20-61915

7    GORDON JENSEN HEALTHCARE      .

8    ASSOCIATION, INC.,            .

9                                  .  Atlanta, GA

10       DEBTOR.                   .  December 10, 2020

11                                 .  9:57 AM

12   . . . . . . . . . . . . . . . .

13

14                     TRANSCRIPT OF

15       HEARING BEFORE THE HONORABLE BARBARA ELLIS-MONRO

16              UNITED STATES BANKRUPTCY JUDGE

17

18

19   Transcription Services:         Veritext

20                                   330 Old Country Road

21                                   Suite 300

22                                   Mineola, NY 11501

23

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

Page 2

1  APPEARANCES:
2  For the Debtors:      THEODORE N. STAPLETON, ESQ.
3                        THEODORE N. STAPLETON, P.C.
4                        Suite 100-B
5                        2802 Paces Ferry Road
6                        Atlanta, GA 30339
7
8  For the Trustee:      VANESSA A. LEO, ESQ.
9                        OFFICE OF THE U.S. TRUSTEE
10                       362 Richard Russell Federal
11                       Building
12                       75 Ted Turner Drive, SW
13                       Atlanta, GA 30308
14
15  For Robert Earl       GARY L. WIMBISH, ESQ.
16  Blanton Jr. and       COLIN ASHGROVE, ESQ.
17  Robert Earl           WILKES & ASSOCIATES
18  Blanton III and       1 N. Dale Mabry Hwy
19  Dianne Barlow:        Suite 700
20                        Tampa, FL 33609
21
22
23
24
25

Page 3

1  For BOKF, N.A.:       JAMES A. HIGGINS, ESQ.
2                        FREDERIC DORWART, LAWYERS PLLC
3                        Old City Hall
4                        124 East Fourth Street
5                        Tulsa, OK 74103-5027
6
7                        PATRICK SILLOWAY, ESQ.
8                        WALT JONES, ESQ.
9                        BALCH & BINGHAM LLP
10                       30 Ivan Allen, Jr. Boulevard
11                       Suite 700
12                       Atlanta, GA 30308
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1                I N D E X
2
3  1)  Evidentiary hearing on BOKF's Motion to Dismiss, for
4  Relief from the Automatic Stay, or to Appoint Chapter 11
5  Trustee
6
7  2)  Status Conference
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

1                I N D E X
2                RULINGS
3                      PAGE    LINE
4  Relief from Stay Granted          28     24
5
6  Motion to Dismiss Continued         29      2
7
8  Motion for Appointment of Trustee Continued  29      2
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

2 (Pages 2 - 5)

Page 6

1         P R O C E E D I N G S
2         CLERK:  Good morning.  I am Candice Holley,
3  courtroom deputy for Judge Ellis-Monro.  I'll be calling
4  today's calendar.  Today is December 10th, 2020, and the
5  time is 9:59 a.m.
6         Here are the governing rules for today's call.
7  Please place all phones on mute, and under no circumstances
8  should you place this call on hold.  Please make sure you
9  are at a quiet place, free of any background noise.
10        If you are dropped from this call, it is your
11 responsibility to dial back in.  If I am dropped from the
12 call, please do not hang up, and wait for me to dial back in
13 or for an announcement with other instructions.
14        This is U.S. Bankruptcy Court hearing, and
15 pursuant to Bankruptcy Local Rule 5073-1, you are prohibited
16 from recording or broadcasting the proceedings.  This
17 hearing is being recorded by AT&T Reservationless Service
18 only.
19        Each time you speak, please identify yourself for
20 the record.  Thank you.
21        We are here on the matter of Bama Oaks Retirement
22 and Gordon Jensen Healthcare Association for a status
23 conference.  May I take appearances, please?
24        MR. STAPLETON:  Your Honor -- I mean, Candace,
25 this is Ted Stapleton on behalf of the Debtors Bama Oaks and

Page 7

1  Gordon Jensen.
2         MR. WIMBISH:  And this is --
3         MS. LEO:  Vanessa Leo on behalf of the United
4  States Trustee.
5         MR. WIMBISH:  And this is Gary Wimbish, who along
6  with Colin Ashgrove, is on the line, represent Robert Earl
7  Blanton, Jr., by and through Attorney-in-Fact, Robert Earl
8  Blanton, III, in the Bama Oaks bankruptcy, and we represent
9  a claimant -- another claimant, Dianne Barlow, Executrix
10 for the Estate of Everett Hamrick in the Gordon Jensen
11 bankruptcy.
12        CLERK:  Thank you.  And I'm sorry, who was the
13 other person with you, Mr. Wimbish?
14        MR. WIMBISH:  Colin Esgro with my office.
15        CLERK:  Thank you.
16        MR. ESGRO:  (indiscernible), I'm here.
17        CLERK:  Thank you.  Does anyone else need to make
18 an appearance?
19        MR. HIGGINS:  Yes.  James Higgins for BOKF, N.A.
20        MR. SILLOWAY:  This is Patrick --
21        MR. JONES:  Good morning --
22        MR. SILLOWAY:  -- Silloway for BOKF, N.A.  Yes.
23        MR. JONES:  Good morning, Candace.  Walt Jones,
24 with Balch & Bingham on behalf of BOKF, N.A. and its Trustee
25 in the two cases.

Page 8

1         CLERK:  Thank you.  Has anyone been omitted?
2  Okay.  The Court will join the line momentarily.
3         AUTOMATED VOICE:  This conference is being
4  recorded.  Only the main conference is recorded.
5         THE COURT:  Good morning.
6         CLERK:  Good morning, Your Honor.  We are on the
7  record in the matters of Bama Oaks Retirement, case number
8  20-61914 and Gordon Jensen Healthcare Association, case
9  number 20-61915.
10        May we take appearance for the Bench, please?
11        MR. STAPLETON:  This is Ted Stapleton for Gordon
12 Jensen Healthcare and Bama Oaks Retirement.
13        AUTOMATED VOICE:  Your line is now muted.
14        MS. LEO:  Vanessa Leo --
15        MR. JONES:  Good morning --
16        MS. LEO:  -- on behalf of the United States
17 Trustee.
18        MR. JONES:  Good morning, Your Honor.  Walt Jones
19 with Balch & Bingham on behalf of BOKF, N.A., the Indenture
20 Trustee.
21        MR. WIMBISH:  Good morning, Your Honor.  Gary
22 Wimbish on behalf of Creditors Robert Earl Blanton, Jr., by
23 and through Attorney-in-Fact, Robert Earl Blanton, III, in
24 the Bama Oaks case, and Dianne Barlow, Executrix for the
25 Estate of Everett Hamrick in the Gordon Jensen bankruptcy

Page 9

1  matter.  And I also have Colin Esgro with my office with me,
2  as well.
3         THE COURT:  All right.
4         MR. ESGRO:  Good morning, Your Honor.
5         THE COURT:  Anyone else?
6         MR. HIGGINS:  Good morning, Your Honor.  James --
7  James Higgins.
8         THE COURT:  I'm sorry.
9         MR. HIGGINS:  I'm sorry, Your Honor.  James
10 Higgins with BO -- BOKF, N.A.  I -- I'm with Frederic
11 Dorwart, Lawyers in Tulsa, Oklahoma.
12        THE COURT:  All right.
13        MR. SILLOWAY:  And Judge, this is Patrick
14 Silloway.  I'm also with Balch & Bingham on behalf of BOKF,
15 N.A.
16        THE COURT:  All right.  Good morning.  I
17 understand that rather than the evidentiary hearing that was
18 scheduled, this is more in the nature of a status
19 conference.  So, Mr. Stapleton or Mr. Jones?
20        MR. STAPLETON:  Yes, Your Honor --
21        MR. JONES:  Your Honor, Walt --
22        MR. STAPLETON:  This is Ted Stapleton.
23        MR. JONES:  Good morning, Walt --
24        MR. STAPLETON:  Go ahead, Walt.
25        MR. JONES:  Thank -- thank you, Ted.  Walt Jones

3 (Pages 6 - 9)

Page 10

1 on behalf of BOKF, Your Honor.

2        As Your -- as Your Honor's aware, we filed motions

3 to dismiss motions for relief or in the alternative, motions

4 to appoint trustee, in both cases.  BOKF, N.A. is the

5 Indenture Trustee on three separate bond issuances.  Two of

6 the bond issuances involved Debtor Bama Oaks as the

7 borrower.  And those two bond issuances are secured by an

8 assisted living facility and an independent living facility

9 in Mobile, Alabama.  The third bond issuance involves the

10 Debtor Gordon Jensen, as borrower, secured by a skilled

11 nursing facility, also in Mobile.  The three facilities sit

12 on a common campus in Mobile.  But there are three separate

13 mortgages, three separate bond issuances.

14        Your Honor, these facilities have been involved in

15 litigation in one form or fashion for a number of years.

16 Mr. Brogdon was the subject of an SEC action that was filed

17 in the District of New Jersey, I believe in 2015, and there

18 was a monitor appointed in that case.  And there was

19 ultimately a plan of liquidation that was accepted by the

20 District Court in New Jersey, which involved all three of

21 these facilities into -- in addition to a number of other

22 facilities that Mr. Brogdon had an interest in.

23        The plan of liquidation and that monitorship

24 terminated earlier this year, and once the monitorship

25 terminated, Your Honor, BOKF, as Indenture Trustee, acting

Page 11

1 on behalf of the bondholders, reached out to Mr. Brogdon's

2 representatives, and indicated that the Indenture Trustee

3 would be moving for appointment of a fiduciary, most likely

4 a receiver.  And the Debtors proceeded at that point to file

5 the current bankruptcy cases.

6        And so, Your Honor, since the bankruptcy cases

7 were filed, BOKF, through a number of professionals and

8 experts in the industry, has been looking into the

9 financials, financial operations, fiscal operations,

10 management, clinical management of the facilities, and based

11 upon what our experts found, we determined it'd be in the

12 best interest of the bondholders to move the way that we

13 did.

14        We've been in communication with Mr. Stapleton

15 for, gosh, probably six or seven weeks now, regarding some

16 sort of resolution.  And we heard from Mr. Stapleton late

17 Friday afternoon that the Debtors would consent to relief.

18 It -- he had -- he had indicated dismissal.  We conferred

19 with our experts and we requested that the Debtors consent

20 to stay relief rather than dismissal of the cases.

21        These are three senior living facilities with

22 residents in all three.  And the Indenture Trustee has

23 tremendous concern with a situation where the facilities are

24 not at least being overseen by someone until such time as we

25 can get a court-appointed fiduciary, a receiver, in place

Page 12

1 for the facilities.

2        We have -- we posed that request to Debtor's

3 counsel.  We, quite frankly, were very surprised by the

4 responses that were filed after 5:00 yesterday.  They do

5 seem to consent to dismissal, but they do not -- do not

6 mention the stay relief that understood was likely.

7        And so, what our proposal would be, Your Honor,

8 considering the fact that we have operating senior living

9 facilities, considering the fact that the SEC now holds a

10 $47 million judgment against Mr. Brogdon, who is the

11 principal of Bama Oaks, and the principal of one of the

12 management companies that manages the skilled nursing

13 facility owned by Gordon Jensen, that we be permitted to

14 submit an order that would grant stay relief to BOKF so that

15 it might pursue appointment of a receiver in the Southern

16 District of Alabama for the three facilities.

17        And Your Honor, we're asking for that -- for that

18 relief rather than dismissal so that the Debtors, Mr.

19 Brogdon, remain accountable to some court, pending

20 appointment of that -- of that fiduciary.  We believe that

21 it's absolutely necessary that there be some oversight and

22 some accountability during that gap period between stay

23 relief being granted and relief in the form of a -- of a

24 receiver in the Southern District of Alabama being

25 appointed.

Page 13

1        We know that this is a unique time with regard to

2 the pandemic in particular.  And so, we have, not only

3 concerns with regard to financial management of these

4 facilities during that interim period, but also the clinical

5 management of the facilities and the impact on the health

6 and wellbeing of the -- of the residents in those

7 facilities.  So, that would be our request.

8        I don't know to what extent it makes sense to

9 respond to the responses that were filed late yesterday.

10 There were no formal responses filed to our motion before

11 this, and we were prepared to put on testimony of several

12 experts considered -- concerning financial mismanagement of

13 the facilities and clinical mismanagement.  But Your Honor,

14 that would be -- that would be BOKF's request today, to

15 resolve our -- to our -- to resolve our motions.

16        THE COURT:  Let me ask you this --

17        MR. JONES:  And we would not -- yes.  Yes, Your

18 Honor?

19        THE COURT:  Go ahead.  Go ahead.

20        MR. JONES:  Well, I was just going to mention that

21 we would not oppose dismissal of the cases once a fiduciary

22 receiver is put in place by the Southern District of

23 Alabama.  We understand from Ms. Leo that there are certain

24 requirements that she would have as far as with the

25 operating reports and the Trustee's fees, and the like.  But

4 (Pages 10 - 13)

Page 14

1  once that fiduciary is there in place, that we can rely on
2  to oversee the facilities, so we would not have opposition
3  to dismiss.
4        THE COURT:  All right.  And assuming I lift the
5  stay today, what is your expectation in terms of how long it
6  takes to appoint a receiver?
7        MR. JONES:  So, we believe we'll be in a position
8  to file papers in the Southern District of Alabama next
9  week.  The -- prior to the pandemic, an emergency motion to
10 appoint a receiver, especially in senior living, would be
11 granted quickly and the matter heard quickly.  We still
12 think that's the case.  We think that the facts and
13 situation here would prompt the court to hear us quickly.
14 We don't have any control over that, but that's what we
15 would be doing.  We would -- we would file our petition
16 along with an emergency motion to be heard on, on
17 appointment of the receiver.
18       Our hope would be that within the month, we would
19 -- we would be heard.  The holidays are obviously going to
20 impact that as well.  But, you know, within 30 to 60 days I
21 think is reasonable.
22       THE COURT:  All right.  Thank you.  Mr. Stapleton?
23       MR. STAPLETON:  Yes, Your Honor.  Good morning.
24 Ted Stapleton on behalf of both of the Debtors.
25 Your Honor, there's never been any dispute that

Page 15

1  these properties are deeply underwater and have no equity.
2  The assisted living and the independent living facilities at
3  Bama Oaks are appraised by the bank at $9 million, and the
4  bank is owed approximately $20 million on those facilities.
5  On Gordon -- the Gordon Jensen nursing home, the appraisal
6  came in at $4.2 million, and the bank was owed $9.7 million,
7  approximately.
8        Your Honor, the Debtors have been in discussions
9  with the bank before the cases were filed and extensively
10 since the cases were filed, and it was always contemplated
11 that there would be liquidation plans filed in these cases,
12 which we have -- which we have filed.  My understanding was
13 that the bank would support the liquidation plans because
14 they were provided comfort that the Debtors would market the
15 properties and would be under the supervision of the
16 Bankruptcy Court.  And now, apparently, they have changed
17 their position.
18       We've talked to the bank about various options.
19 We've offered to pay $50,000 a month in adequate protection
20 payments, which the bank has rejected.  And so to the extent
21 that the bank has changed its position, the Debtors believe
22 that the cases should be dismissed and the bank can pursue
23 its remedies under applicable non-bankruptcy law.
24       We have good management in the facilities.  There
25 are no concerns about the cares of the resident -- the care

Page 16

1  for the residents, and all of the ombudsman's reports have
2  been positive, the most recent one was filed on Monday.  And
3  we don't see any reason to lift the stay if -- I mean, with
4  the -- there are very few unsecured creditors.  There is one
5  wrongful death claimant in the Bama case and three wrongful
6  death claims in the Gordon Jensen case.  But other than
7  that, there are no -- there are no unsecured creditors.  We
8  have -- we have no idea when a receiver will be appointed.
9        Of course, we will continue to provide quality
10 care until the bank forecloses or gets a receiver appointed.
11 But, you know, my understanding is that the Debtors will
12 oppose appointment of receivers, and there's really no
13 reason to keep the cases open if they're lifting the stay.
14 The assets would go back to the bank, and there's no --
15 really no reason for the Debtors to incur additional
16 attorney's fees and U.S. Trustee fees, et cetera.
17       MR. JONES:  Your Honor, if I may -- Walt Jones on
18 behalf of BOKF.
19       I am not aware, and I don't know that it's
20 relevant really to what's being considered today, but I am
21 not aware of at any point the Indenture Trustee
22 communicating to Mr. Brogdon or to his representatives that
23 the Indenture Trustee was okay or in any way approved of or
24 acquiesced to a liquidating plan in bankruptcy.  I just want
25 to make certain that the -- that the record is clear on

Page 17

1  that.
2        Further, the ombudsman that's been appointed, has
3  been appointed only in the Bama Oaks case because the Gordon
4  Jensen facility is actually operated by a wholly-owned
5  subsidiary called Knollwood NH, LLC.  And I don't believe
6  there is an ombudsman appointed in -- on that case, nor are
7  any month -- real monthly operating reports being filed in
8  that case because Gordon Jensen really doesn't have any
9  financial activity.  It's a wholly-owned subsidiary.
10       MR. STAPLETON:  That's correct, Your Honor.
11       THE COURT:  Does it have -- it has residents?
12       MR. JONES:  It does, yes, Your Honor.
13       MR. STAPLETON:  Well, this is --
14       THE COURT:  And -- all right.  Go ahead, Mr. --
15       MR. STAPLETON:  (Indiscernible) --
16       THE COURT:  Go ahead, Mr. Stapleton.
17       MR. STAPLETON:  Yes, the Knollwood nursing center
18 -- home that is owned, operated by -- owned by the Debtor
19 and operated by the wholly-owned subsidiary has residents.
20       THE COURT:  Well, and I'm not sure, Mr. Stapleton,
21 if it was your case or not, but a year or two ago, with my
22 first senior living center, I made it very clear that the
23 thing that the Court is most concerned about is the care of
24 the residents and that I was not going to oversee cases
25 where residents were not being cared for.

5 (Pages 14 - 17)

Page 18

1    Mr. Jones has indicated they have had experts
2  review the facilities, and Mr. Stapleton, you're indicating
3  that the residents' care is adequate, I would -- I'd like
4  you each to address that point.
5    MR. JONES:  Your Honor, Walt Jones on behalf of
6  BOKF.
7    As part of our review, at -- one of our experts,
8  Derek Pierce, with Healthcare Management Partners, engaged a
9  clinical firm called Pathway Health.  And Pathway Health
10  undertook a clinical analysis of the State Health
11  Department's surveys of the skilled nursing facility in
12  particular, and what was found there by the State inspectors
13  was that, and this is leading up to the beginning of the
14  pandemic, that there was no infectious -- or infection
15  prevention control policy in place, that no infection
16  control logs had been generated since December of 2018.  You
17  had higher than the national average UTI rate.  You had
18  lower than the national average flu vaccines.  And you had
19  significantly lower than national average pneumonia
20  vaccines.
21    We know that there were at least 14 diagnosed
22  cases of the COVID-19 virus in the skilled nursing facility.
23  We understand from 341 testimony that all 14 of those
24  residents passed away.  We understand that it's a struggle
25  with regard to COVID infection of the staff.

Page 19

1    Now, we do understand that the census, which was
2  negatively impacted by the virus, that it is has improved,
3  but based on -- based on the information that we've seen in
4  how things were handled leading up to the pandemic, we have
5  -- we have tremendous concern for how the -- how the
6  facility's being clinically operated.
7    MR. STAPLETON:  Your Honor --
8    THE COURT:  Mm hmm.
9    MR. STAPLETON:  -- Ted Stapleton for the Debtors.
10    The Debtors vehemently dispute those allegations.
11  The Debtors are in total compliance with all regulations of
12  the Centers for Medicare and Medicaid Services and the
13  Alabama Health Department.
14    The -- in regard to the COVID response,
15  apparently, my understanding is in March 2020 there was no
16  infection prevention or control policy that related to COVID
17  that was set forth by any of the regulatory agencies.  And
18  the management developed their own COVID infection
19  prevention and control policy in conjunction with the CDC
20  and the Alabama Department of Health, and remain in complete
21  compliance.
22    The allegation that at the Knollwood facility
23  there were below-average immunization rates doesn't make any
24  sense because you can't force people to be immunized.
25    But the -- but the bottom line is, Your Honor, as

Page 20

1  reflected in the ombudsman's reports on Bama Oaks and the
2  fact that we are in compliance with all -- there are no
3  outstanding deficiencies on any surveys from the State of
4  Alabama Health Department or the CMS.  We are in complete
5  compliance, and there are no outstanding deficiencies, Your
6  Honor.
7    MR. JONES:  Your Honor, if I -- if I could speak
8  to that?  What Pathway Health found was not that there was
9  no infection prevention control policy with regard to COVID,
10  but that there was no infection prevention control policy
11  period in the lead up to -- lead up to the pandemic.
12  Further, there were no infection control logs since December
13  of 2018.  So, those logs identify the types of infections
14  that are -- that are being experienced there at the
15  facilities.  So, a couple of corrections there.
16    With regard to the -- to the vaccination
17  percentages, it certainly does make sense.  Those
18  percentages are compared against the national average for
19  facilities like the Knollwood facility.  So in short, you
20  can't force a resident to take a vaccine, but no facility
21  can force a resident to take a vaccine.  So, then it comes
22  down to encouraging a vaccine and educating on the vaccines.
23    I would also say, Your Honor, that we've -- we
24  have heard with regard to the assisted living facility and
25  the independent living facility, that Mr. Brogdon, through

Page 21

1  one of his affiliate entities, St. Simons Healthcare, his --
2  he's constantly having to prop that -- those facilities up
3  financially.  Mr. Brogdon's -- another of his affiliates,
4  Marsh Pointe, is one of the management parties on the
5  Knollwood facility as well.  And Mr. Brogdon is now subject
6  to a $47 million judgment in favor of the SEC, which the SEC
7  is enforcing.
8    There have been numerous petitions for -- with the
9  garnishment filed that has been granted by Judge McNulty out
10  of the District Court of New Jersey in the SEC action.  And
11  so, we have concerns there that if Mr. Brogdon's being
12  squeezed by the SEC, with regard to the judgment the SEC
13  holds against him, and then at the same time he's telling us
14  that he is -- he is financially having to support the
15  facilities, one has to wonder what impact that is going to
16  have on operations -- on operations going forward.  And from
17  our perspective as the Indenture Trustee, that's just not a
18  risk that can be taken, you know, whether you look at it
19  from, you know, from our bondholders -- these are widely
20  held bonds, or from -- from the residents' perspective.
21    And I --
22    MR. STAPLETON:  Your Honor, I've -- Ted Stapleton
23  for the Debtors.
24    I just have to reiterate there was no infection
25  control prevention and control policy related to COVID in

6 (Pages 18 - 21)

Page 22

1  place by anybody in March of 2020, not the Alabama Health
2  Department, not the CMS, and we developed our own policy
3  that would -- in conjunction with the CDC and the Alabama
4  Department of Health that was approved and is complete in --
5  within which we are in complete compliance.  And, I mean,
6  you can argue about people getting immunized, but if they
7  don't want be immunized, you can't force them.
8       Judge, we have been taking care of this facility
9  and all of the residents and we will continue to do so.
10  There are no deficiencies with the State resulting from
11  their surveys of the facilities.  And we are in complete
12  compliance.  And we'll continue to take care of the
13  residents.
14       THE COURT:  Does anyone else wish to be heard?
15       MS. LEO:  Your Honor, Vanessa Leo on behalf of the
16  United States Trustee.
17       I just want to add, Your Honor, that during my
18  discussions with both Mr. Jones and Mr. Stapleton, that is
19  the United States Trustee's main concern in this case, is
20  regarding the actual operation of the facility and the care
21  of the patients in those facilities.
22       While I have no true position in regards to what
23  agreements are reached in terms of the parties today, the
24  United States Trustee is highly concerned about stay relief,
25  in fact, being granted, Your Honor, and a long-stemmed delay

Page 23

1  between the court appointment of an Indenture Trustee or
2  another fiduciary in that capacity.  And in the event of
3  dismissal, Your Honor, in the middle of a national
4  healthcare crisis, that becomes a very serious concern on
5  both sides of the fence, I would imagine in terms of both
6  Mr. Jones's client and Mr. Stapleton's client, and clearly
7  that of the United States Trustee.
8       While the ombudsman reports for this facility
9  have, in fact, been good reports throughout the case, the
10  ongoing care of the patients would cease upon either stay or
11  -- excuse me, dismissal of the case from the healthcare
12  ombudsman, and, in fact, stay relief.
13       I know that there has been an alternative request
14  in Mr. Jones's motion related to an appointment of a Chapter
15  11 Trustee, which the United States Trustee would not oppose
16  if that was the -- what the Court was to order today, but I
17  -- we do believe that oversight must continue whether it is
18  through the bankruptcy case, Your Honor, or, in fact, a
19  appointment of a receiver in the state court.  But it -- the
20  state court action needs to be taken immediately and care of
21  the patients must be continued.
22       Mr. JONES:  Your Honor, if I may -- Walt Jones on
23  behalf of BOKF.
24       It is -- it is absolutely the intention of the
25  Indenture Trustee to secure oversight by way of a receiver

Page 24

1  for the facilities, in the very, very, very near term.  It's
2  not in the interest of our bondholders or the residents for,
3  you know, any real time to pass.
4       I would say, too, there's been reference that --
5  to receivership and how that will turn out ultimately.  Mr.
6  Stapleton has indicated his client will resist that effort.
7  But the Indenture Trustee holds mortgages against these
8  facilities.  And we will not be satisfied with Mr. Brogdon
9  controlling managing these facilities.  If -- if necessary,
10  we do have the right to foreclose those mortgages, which
11  would be another -- which would be another avenue of gaining
12  control -- putting control in the hands of a -- of a
13  fiduciary.  And we would utilize the same team that we have
14  put together to handle a receivership of these facilities.
15  We would utilize that same team of professionals to manage
16  the facility if we do -- if we had to go that route of
17  foreclosure.
18       MR. STAPLETON:  Your Honor --
19       THE COURT:  Well, part of that, Mr. --
20       MR. STAPLETON:  Go ahead.  I'm sorry.
21       THE COURT:  Hold on just a second, Mr. Stapleton.
22       Doesn't that raise the spectrum, Mr. Jones, of a
23  long drawn-out fight in state court and the residents
24  basically being in the balance, isn't the better answer to
25  consider appointment of the Chapter 11 Trustee to oversee

Page 25

1  care as well as finances to come up with a final resolution
2  that addresses both the care and the Indenture Trustee's
3  interest in the mortgages?  I mean, there's no dispute that
4  these facilities are underwater.  There is obviously a
5  dispute as to care.  But there needs to not be a gap here
6  with respect to who's running the facilities and what care
7  is being given.
8       Though, Mr. Stapleton, would your client oppose
9  appointment of a trustee?
10       MR. STAPLETON:  Yes, Your Honor.  I mean, there's
11  nothing for a Chapter 11 trustee to do if the stay is
12  lifted.  There are no assets.  We have been taking and
13  providing quality care, and, you know, the -- in addition to
14  the cost of a Chapter 11 trustee, what else is he going to
15  do?  I mean, we are competently managing the facilities and
16  taking care of the residents and in compliance with all
17  state and federal regulations, and we will continue to do
18  that.  I mean, there's no question about that.  And we have
19  done that for the duration of the case, and we will continue
20  to do that until the bank forecloses or appoints a receiver,
21  or whatever.  But there's really nothing to justify the
22  expense of a Chapter 11 trustee.  We will continue to do the
23  good job that we have been doing to take care of the
24  residents in the -- in any event, Your Honor.
25       MR. JONES:  Your Honor, if I -- if I may -- Walt

7 (Pages 22 - 25)

Page 26

1  Jones on behalf of BOKF.

2      There certainly is -- there certainly is dispute
3  with regard to how the facilities are being managed, and I
4  think -- I think we've made that clear.

5      Your Honor, the Indenture Trustee's position would
6  be that a receiver appointed by a local court would be the
7  most efficient way to address the concerns that we all have,
8  not only, you know, with regard to patient care, which is
9  most important, but then also, financial management of the
10 facility.

11     I would offer another potential solution, and that
12 is that stay relief be granted, the -- permit the Trustee to
13 pursue appointment of a receiver in the Southern District of
14 Alabama, and that if a receiver is not appointed by that
15 court, that a Trustee is appointed as a fallback. And I
16 don't see -- I don't see how that would -- how that would
17 run contrary to -- to what the Code would permit, and it
18 would provide -- it would provide oversight of this Court
19 and of the U.S. Trustee while the cases are still pending,
20 but stay relief has been granted for us to pursue
21 appointment of a receiver. And if for -- if the Southern
22 District of Alabama denies appointment of receiver, which we
23 think the odds of are very, very, very low in this
24 situation, then come back to a trustee in bankruptcy.

25     That would be -- that would be our preference from

Page 27

1  an efficiency perspective and we'd ask the Court to consider
2  that relief.

3      MR. STAPLETON: Your Honor, Ted Stapleton again
4  for the Debtors.

5      They're really -- the bank is wanting to exit
6  bankruptcy, but not exit bankruptcy. They -- case -- the
7  cases are dismissed, they can afford themselves of all their
8  remedies under applicable non-bankruptcy law, including
9  going to the District Court as it's indicated it's already
10 going to do, and the District Court or any other non-
11 bankruptcy forum can address any concerns that they have
12 about any operational or clinical deficiencies they think
13 they have. But it -- if they're done, they're done. And
14 they can afford the remedies in a -- in a non-bankruptcy
15 forum.

16     MR. JONES: And I would offer, Your Honor, that
17 this is not -- this is not an apartment complex case. This
18 is -- this is a case involving senior living and skilled
19 nursing facilities. And so, that's why I -- I admit that
20 that is unique. But I think that it may serve the purpose
21 well here to make certain that there's always -- there is
22 always oversight, that Mr. Brogdon is not left, you know, to
23 manage these facilities without some fiduciary overseeing
24 what he's doing.

25     MR. STAPLETON: Your Honor, the --

Page 28

1      THE COURT: All right. Okay. Go ahead, Mr.
2  Stapleton.

3      MR. STAPLETON: No -- the bank -- if the bank
4  wants the cases dismissed, they can run to, as indicated,
5  the Southern District of Alabama, get whatever expedited
6  relief they -- they seek, and there's just no reason to keep
7  this going.

8      The -- the management companies will continue to
9  operate these, and what Mr. Jones is indicating will be
10 short term. And there's just -- just no need to keep these
11 cases open.

12     THE COURT: Well, we -- I thought we had -- we had
13 an agreement of the parties --

14     MR. JONES: We did, too. I did, too, Your Honor.

15     THE COURT: -- (indiscernible) evidentiary
16 hearing. People are arguing about things that are obviously
17 factual that I can make no findings on with respect to care
18 of patients.

19     What I do know is there's no dispute that there's
20 not equity in the property held by the Indenture Trustee's
21 interest, there is concern about making sure that patients
22 are cared for, that dismissal may make some sense, shortly.
23 But I am not willing to dismiss the cases today.

24     What I'm going to do is I'm going grant relief
25 from the stay for the purpose of seeking appointment of a

Page 29

1  receiver in the Southern District of Alabama, and I'm going
2  to continue the other matters, being the motion to dismiss,
3  motion for appointment of a trustee, for about 30 days to
4  determine where things are. And at that point, it may be
5  that we need evidence as to care because Mr. Stapleton, if
6  you're right, everything is running exactly how it should
7  be, and the patients are truly being taken care of, and
8  everything is being complied with, then it may be there --
9  that adapt on oversight is not problematic.

10     But I'm not convinced today. There's been
11 arguments. So, Ms. Holly, what do we have towards the
12 middle -- around the week of the 18th of January that we
13 could --

14     AUTOMATED VOICE: Your line is now unmuted.

15     CLERK: The week of the 18th, we have January
16 22nd, Your Honor, Friday, January 22nd.

17     THE COURT: All right. All right. So, I'm going
18 to continue the motion to dismiss, motion to appoint trustee
19 until 10:00 a.m. on January the 22nd. That will be set up
20 as an evidentiary hearing, and we'll grant relief from the
21 stay as I've indicated.

22     MR. JONES: Thank you, Your Honor. Do I need to
23 submit a draft order to the Court or will the Court prepare
24 the order?

25     THE COURT: It would be great if you would submit

8 (Pages 26 - 29)

Page 30

1  a proposed order.

2         MR. JONES:  Yes, Your Honor.

3         THE COURT:  Thank you all.  And we'll see --

4         MR. STAPLETON:  Thank you, Your Honor.

5         MR. JONES:  Thank you, Your Honor.

6         MR. STAPLETON:  Thank you, Judge.  I'd like to --

7  that order.

8         THE COURT:  I'm sorry, Mr. Stapleton?

9         MR. STAPLETON:  Yeah, I'd just like Mr. Jones to

10  share that as a draft order, and --

11        THE COURT:  Certainly.

12        MR. JONES:  Absolutely.

13        THE COURT:  And Ms. -- and Ms. Leo.  Thank you

14  all.

15        MS. LEO:  Thank you, Your Honor.

16        MR. STAPLETON:  Thank you.

17        MR. JONES:  Thank you.

18        THE COURT:  Bye-bye.

19

20

21

22

23

24

25

Page 31

1          C E R T I F I C A T I O N

2

3     I, Sonya Ledanski Hyde, certified that the foregoing

4  transcript is a true and accurate record of the proceedings.

5

6

7

8  Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20  Veritext Legal Solutions

21  330 Old Country Road

22  Suite 300

23  Mineola, NY 11501

24

25  Date:  May 20, 2021

9 (Pages 30 - 31)

| & |
|---|
| **&**   2:17 3:9 7:24 |
| 8:19 9:14 |

| 1 |
|---|
| **1**   2:18 4:3 |
| **10**   1:10 |
| **100**   2:4 |
| **10:00**   29:19 |
| **10th**   6:4 |
| **11**   4:4 23:15 24:25 |
| 25:11,14,22 |
| **11501**   1:22 31:23 |
| **124**   3:4 |
| **14**   18:21,23 |
| **18th**   29:12,15 |
| **19**   18:22 |

| 2 |
|---|
| **2**   4:7 5:6,8 |
| **20**   15:4 31:25 |
| **20-61914**   1:5 8:8 |
| **20-61915**   1:6 8:9 |
| **2015**   10:17 |
| **2018**   18:16 20:13 |
| **2020**   1:10 6:4 |
| 19:15 22:1 |
| **2021**   31:25 |
| **22nd**   29:16,16,19 |
| **24**   5:4 |
| **28**   5:4 |
| **2802**   2:5 |
| **29**   5:6,8 |

| 3 |
|---|
| **30**   3:10 14:20 29:3 |
| **300**   1:21 31:22 |
| **30308**   2:13 3:12 |
| **30339**   2:6 |
| **330**   1:20 31:21 |
| **33609**   2:20 |
| **341**   18:23 |
| **362**   2:10 |

| 4 |
|---|
| **4.2**   15:6 |
| **47**   12:10 21:6 |

| 5 |
|---|
| **50,000**   15:19 |
| **5073-1**   6:15 |
| **5:00**   12:4 |

| 6 |
|---|
| **60**   14:20 |

| 7 |
|---|
| **700**   2:19 3:11 |
| **74103-5027**   3:5 |
| **75**   2:12 |

| 9 |
|---|
| **9**   15:3 |
| **9.7**   15:6 |
| **9:57**   1:11 |
| **9:59**   6:5 |

| a |
|---|
| **a.m.**   6:5 29:19 |
| **absolutely**   12:21 |
| 23:24 30:12 |
| **accepted**   10:19 |
| **accountability** |
| 12:22 |
| **accountable** |
| 12:19 |
| **accurate**   31:4 |
| **acquiesced**   16:24 |
| **acting**   10:25 |
| **action**   10:16 |
| 21:10 23:20 |
| **activity**   17:9 |
| **actual**   22:20 |
| **adapt**   29:9 |
| **add**   22:17 |
| **addition**   10:21 |
| 25:13 |
| **additional**   16:15 |
| **address**   18:4 26:7 |
| 27:11 |

**addresses**   25:2
**adequate**   15:19
  18:3
**admit**   27:19
**affiliate**   21:1
**affiliates**   21:3
**afford**   27:7,14
**afternoon**   11:17
**agencies**   19:17
**ago**   17:21
**agreement**   28:13
**agreements**   22:23
**ahead**   9:24 13:19
  13:19 17:14,16
  24:20 28:1
**alabama**   10:9
  12:16,24 13:23
  14:8 19:13,20
  20:4 22:1,3 26:14
  26:22 28:5 29:1
**allegation**   19:22
**allegations**   19:10
**allen**   3:10
**alternative**   10:3
  23:13
**analysis**   18:10
**announcement**
  6:13
**answer**   24:24
**anybody**   22:1
**apartment**   27:17
**apparently**   15:16
  19:15
**appearance**   7:18
  8:10
**appearances**   2:1
  6:23
**applicable**   15:23
  27:8
**appoint**   4:4 10:4
  14:6,10 29:18
**appointed**   10:18
  11:25 12:25 16:8

16:10 17:2,3,6
  26:6,14,15
**appointment**   5:8
  11:3 12:15,20
  14:17 16:12 23:1
  23:14,19 24:25
  25:9 26:13,21,22
  28:25 29:3
**appoints**   25:20
**appraisal**   15:5
**appraised**   15:3
**approved**   16:23
  22:4
**approximately**
  15:4,7
**argue**   22:6
**arguing**   28:16
**arguments**   29:11
**ashgrove**   2:16 7:6
**asking**   12:17
**assets**   16:14 25:12
**assisted**   10:8 15:2
  20:24
**associates**   2:17
**association**   1:8
  6:22 8:8
**assuming**   14:4
**at&t**   6:17
**atlanta**   1:3,9 2:6
  2:13 3:12
**attorney**   7:7 8:23
**attorney's**   16:16
**automated**   8:3,13
  29:14
**automatic**   4:4
**avenue**   24:11
**average**   18:17,18
  18:19 19:23 20:18
**aware**   10:2 16:19
  16:21

**b**

**b**  2:4
**back**  6:11,12
  16:14 26:24
**background**  6:9
**balance**  24:24
**balch**  3:9 7:24
  8:19 9:14
**bama**  1:6 6:21,25
  7:8 8:7,12,24 10:6
  12:11 15:3 16:5
  17:3 20:1
**bank**  15:3,4,6,9
  15:13,18,20,21,22
  16:10,14 25:20
  27:5 28:3,3
**bankruptcy**  1:1
  1:16 6:14,15 7:8
  7:11 8:25 11:5,6
  15:16,23 16:24
  23:18 26:24 27:6
  27:6,8,11,14
**barbara**  1:15
**barlow**  2:19 7:9
  8:24
**based**  11:10 19:3
  19:3
**basically**  24:24
**beginning**  18:13
**behalf**  6:25 7:3,24
  8:16,19,22 9:14
  10:1 11:1 14:24
  16:18 18:5 22:15
  23:23 26:1
**believe**  10:17
  12:20 14:7 15:21
  17:5 23:17
**bench**  8:10
**best**  11:12
**better**  24:24
**bingham**  3:9 7:24
  8:19 9:14

**blanton**  2:16,18
  7:7,8 8:22,23
**bo**  9:10
**bokf**  3:1 7:19,22
  7:24 8:19 9:10,14
  10:1,4,25 11:7
  12:14 16:18 18:6
  23:23 26:1
**bokf's**  13:14
**bokf's**  4:3
**bond**  10:5,6,7,9
  10:13
**bondholders**  11:1
  11:12 21:19 24:2
**bonds**  21:20
**borrower**  10:7,10
**bottom**  19:25
**boulevard**  3:10
**broadcasting**  6:16
**brogdon**  10:16,22
  12:10,19 16:22
  20:25 21:5 24:8
  27:22
**brogdon's**  11:1
  21:3,11
**building**  2:11
**bye**  30:18,18

**c**

**c**  6:1 31:1,1
**calendar**  6:4
**call**  6:6,8,10,12
**called**  17:5 18:9
**calling**  6:3
**campus**  10:12
**candace**  6:24 7:23
**candice**  6:2
**capacity**  23:2
**care**  15:25 16:10
  17:23 18:3 22:8
  22:12,20 23:10,20
  25:1,2,5,6,13,16
  25:23 26:8 28:17
  29:5,7

**cared**  17:25 28:22
**cares**  15:25
**case**  8:7,8,24
  10:18 14:12 16:5
  16:6 17:3,6,8,21
  22:19 23:9,11,18
  25:19 27:6,17,18
**cases**  7:25 10:4
  11:5,6,20 13:21
  15:9,10,11,22
  16:13 17:24 18:22
  26:19 27:7 28:4
  28:11,23
**cdc**  19:19 22:3
**cease**  23:10
**census**  19:1
**center**  17:17,22
**centers**  19:12
**certain**  13:23
  16:25 27:21
**certainly**  20:17
  26:2,2 30:11
**certified**  31:3
**cetera**  16:16
**changed**  15:16,21
**chapter**  4:4 23:14
  24:25 25:11,14,22
**circumstances**  6:7
**city**  3:3
**claimant**  7:9,9
  16:5
**claims**  16:6
**clear**  16:25 17:22
  26:4
**clearly**  23:6
**clerk**  6:2 7:12,15
  7:17 8:1,6 29:15
**client**  23:6,6 24:6
  25:8
**clinical**  11:10 13:4
  13:13 18:9,10
  27:12

**clinically**  19:6
**cms**  20:4 22:2
**code**  26:17
**colin**  2:16 7:6,14
  9:1
**come**  25:1 26:24
**comes**  20:21
**comfort**  15:14
**common**  10:12
**communicating**
  16:22
**communication**
  11:14
**companies**  12:12
  28:8
**compared**  20:18
**competently**
  25:15
**complete**  19:20
  20:4 22:4,5,11
**complex**  27:17
**compliance**  19:11
  19:21 20:2,5 22:5
  22:12 25:16
**complied**  29:8
**concern**  11:23
  19:5 22:19 23:4
  28:21
**concerned**  17:23
  22:24
**concerning**  13:12
**concerns**  13:3
  15:25 21:11 26:7
  27:11
**conference**  4:7
  6:23 8:3,4 9:19
**conferred**  11:18
**conjunction**  19:19
  22:3
**consent**  11:17,19
  12:5
**consider**  24:25
  27:1

**considered** 13:12
16:20
**considering** 12:8
12:9
**constantly** 21:2
**contemplated**
15:10
**continue** 16:9
22:9,12 23:17
25:17,19,22 28:8
29:2,18
**continued** 5:6,8
23:21
**contrary** 26:17
**control** 14:14
18:15,16 19:16,19
20:9,10,12 21:25
21:25 24:12,12
**controlling** 24:9
**convinced** 29:10
**correct** 17:10
**corrections** 20:15
**cost** 25:14
**counsel** 12:3
**country** 1:20
31:21
**couple** 20:15
**course** 16:9
**court** 1:1 6:14 8:2
8:5 9:3,5,8,12,16
10:20 11:25 12:19
13:16,19 14:4,13
14:22 15:16 17:11
17:14,16,20,23
19:8 21:10 22:14
23:1,16,19,20
24:19,21,23 26:6
26:15,18 27:1,9
27:10 28:1,12,15
29:17,23,23,25
30:3,8,11,13,18
**courtroom** 6:3

**covid** 18:22,25
19:14,16,18 20:9
21:25
**creditors** 8:22
16:4,7
**crisis** 23:4
**current** 11:5

**d**

**d** 4:1 5:1 6:1
**dale** 2:18
**date** 31:25
**days** 14:20 29:3
**death** 16:5,6
**debtor** 1:10 10:6
10:10 17:18
**debtor's** 12:2
**debtors** 2:2 6:25
11:4,17,19 12:18
14:24 15:8,14,21
16:11,15 19:9,10
19:11 21:23 27:4
**december** 1:10
6:4 18:16 20:12
**deeply** 15:1
**deficiencies** 20:3
20:5 22:10 27:12
**delay** 22:25
**denies** 26:22
**department** 19:13
19:20 20:4 22:2,4
**department's**
18:11
**deputy** 6:3
**derek** 18:8
**determine** 29:4
**determined** 11:11
**developed** 19:18
22:2
**diagnosed** 18:21
**dial** 6:11,12
**dianne** 2:19 7:9
8:24

**discussions** 15:8
22:18
**dismiss** 4:3 5:6
10:3 14:3 28:23
29:2,18
**dismissal** 11:18
11:20 12:5,18
13:21 23:3,11
28:22
**dismissed** 15:22
27:7 28:4
**dispute** 14:25
19:10 25:3,5 26:2
28:19
**district** 1:2 10:17
10:20 12:16,24
13:22 14:8 21:10
26:13,22 27:9,10
28:5 29:1
**division** 1:3
**docket** 1:5
**doing** 14:15 25:23
27:24
**dorwart** 3:2 9:11
**draft** 29:23 30:10
**drawn** 24:23
**drive** 2:12
**dropped** 6:10,11
**duration** 25:19

**e**

**e** 4:1 5:1 6:1,1
31:1
**earl** 2:15,17 7:6,7
8:22,23
**earlier** 10:24
**east** 3:4
**educating** 20:22
**efficiency** 27:1
**efficient** 26:7
**effort** 24:6
**either** 23:10
**electronic** 1:24

**ellis** 1:15 6:3
**emergency** 14:9
14:16
**encouraging**
20:22
**enforcing** 21:7
**engaged** 18:8
**entities** 21:1
**equity** 15:1 28:20
**esgro** 7:14,16 9:1
9:4
**especially** 14:10
**esq** 2:2,8,15,16
3:1,7,8
**estate** 7:10 8:25
**et** 16:16
**event** 23:2 25:24
**everett** 7:10 8:25
**evidence** 29:5
**evidentiary** 4:3
9:17 28:15 29:20
**exactly** 29:6
**excuse** 23:11
**executrix** 7:9 8:24
**exit** 27:5,6
**expectation** 14:5
**expedited** 28:5
**expense** 25:22
**experienced**
20:14
**experts** 11:8,11
11:19 13:12 18:1
18:7
**extensively** 15:9
**extent** 13:8 15:20

**f**

**f** 31:1
**facilities** 10:11,14
10:21,22 11:10,21
11:23 12:1,9,16
13:4,5,7,13 14:2
15:2,4,24 18:2
20:15,19 21:2,15

22:11,21 24:1,8,9
24:14 25:4,6,15
26:3 27:19,23
**facility** 10:8,8,11
12:13 17:4 18:11
18:22 19:22 20:19
20:20,24,25 21:5
22:8,20 23:8
24:16 26:10
**facility's** 19:6
**fact** 7:7 8:23 12:8
12:9 20:2 22:25
23:9,12,18
**facts** 14:12
**factual** 28:17
**fallback** 26:15
**far** 13:24
**fashion** 10:15
**favor** 21:6
**federal** 2:10 25:17
**fees** 13:25 16:16
16:16
**fence** 23:5
**ferry** 2:5
**fiduciary** 11:3,25
12:20 13:21 14:1
23:2 24:13 27:23
**fight** 24:23
**file** 11:4 14:8,15
**filed** 10:2,16 11:7
12:4 13:9,10 15:9
15:10,11,12 16:2
17:7 21:9
**final** 25:1
**finances** 25:1
**financial** 11:9
13:3,12 17:9 26:9
**financially** 21:3
21:14
**financials** 11:9
**findings** 28:17
**firm** 18:9

**first** 17:22
**fiscal** 11:9
**fl** 2:20
**flu** 18:18
**force** 19:24 20:20
20:21 22:7
**foreclose** 24:10
**forecloses** 16:10
25:20
**foreclosure** 24:17
**foregoing** 31:3
**form** 10:15 12:23
**formal** 13:10
**forth** 19:17
**forum** 27:11,15
**forward** 21:16
**found** 11:11 18:12
20:8
**fourth** 3:4
**frankly** 12:3
**frederic** 3:2 9:10
**free** 6:9
**friday** 11:17
29:16
**further** 17:2
20:12

**g**

**g** 6:1
**ga** 1:9 2:6,13 3:12
**gaining** 24:11
**gap** 12:22 25:5
**garnishment** 21:9
**gary** 2:15 7:5 8:21
**generated** 18:16
**georgia** 1:2
**getting** 22:6
**given** 25:7
**go** 9:24 13:19,19
16:14 17:14,16
24:16,20 28:1
**going** 13:20 14:19
17:24 21:15,16
25:14 27:9,10

28:7,24,24 29:1
29:17
**good** 6:2 7:21,23
8:5,6,15,18,21 9:4
9:6,16,23 14:23
15:24 23:9 25:23
**gordon** 1:7 6:22
7:1,10 8:8,11,25
10:10 12:13 15:5
15:5 16:6 17:3,8
**gosh** 11:15
**governing** 6:6
**grant** 12:14 28:24
29:20
**granted** 5:4 12:23
14:11 21:9 22:25
26:12,20
**great** 29:25

**h**

**hall** 3:3
**hamrick** 7:10
8:25
**handle** 24:14
**handled** 19:4
**hands** 24:12
**hang** 6:12
**health** 13:5 18:9,9
18:10 19:13,20
20:4,8 22:1,4
**healthcare** 1:7
6:22 8:8,12 18:8
21:1 23:4,11
**hear** 14:13
**heard** 11:16 14:11
14:16,19 20:24
22:14
**hearing** 1:15 4:3
6:14,17 9:17
28:16 29:20
**held** 21:20 28:20
**higgins** 3:1 7:19
7:19 9:6,7,9,10

**higher** 18:17
**highly** 22:24
**hmm** 19:8
**hold** 6:8 24:21
**holds** 12:9 21:13
24:7
**holidays** 14:19
**holley** 6:2
**holly** 29:11
**home** 15:5 17:18
**honor** 6:24 8:6,18
8:21 9:4,6,9,20,21
10:1,14,25 11:6
12:7,17 13:13,18
14:23,25 15:8
16:17 17:10,12
18:5 19:7,25 20:6
20:7,23 21:22
22:15,17,25 23:3
23:18,22 24:18
25:10,24,25 26:5
27:3,16,25 28:14
29:16,22 30:2,4,5
30:15
**honor's** 10:2
**honorable** 1:15
**hope** 14:18
**hwy** 2:18
**hyde** 31:3,8

**i**

**idea** 16:8
**identify** 6:19
20:13
**iii** 2:18 7:8 8:23
**imagine** 23:5
**immediately** 23:20
**immunization** 19:23
**immunized** 19:24
22:6,7
**impact** 13:5 14:20
21:15

**impacted** 19:2
**important** 26:9
**improved** 19:2
**including** 27:8
**incur** 16:15
**indenture** 8:19
  10:5,25 11:2,22
  16:21,23 21:17
  23:1,25 24:7 25:2
  26:5 28:20
**independent** 10:8
  15:2 20:25
**indicated** 11:2,18
  18:1 24:6 27:9
  28:4 29:21
**indicating** 18:2
  28:9
**indiscernible** 7:16
  17:15 28:15
**industry** 11:8
**infection** 18:14,15
  18:25 19:16,18
  20:9,10,12 21:24
**infections** 20:13
**infectious** 18:14
**information** 19:3
**inspectors** 18:12
**instructions** 6:13
**intention** 23:24
**interest** 10:22
  11:12 24:2 25:3
  28:21
**interim** 13:4
**involved** 10:6,14
  10:20
**involves** 10:9
**involving** 27:18
**issuance** 10:9
**issuances** 10:5,6,7
  10:13
**it'd** 11:11
**ivan** 3:10

**i'm** 7:12

**j**

**james** 3:1 7:19 9:6
  9:7,9
**january** 29:12,15
  29:16,19
**jensen** 1:7 6:22
  7:1,10 8:8,12,25
  10:10 12:13 15:5
  16:6 17:4,8
**jersey** 10:17,20
  21:10
**job** 25:23
**join** 8:2
**jones** 3:8 7:21,23
  7:23 8:15,18,18
  9:19,21,23,25,25
  13:17,20 14:7
  16:17,17 17:12
  18:1,5,5 20:7
  22:18 23:22,22
  24:22 25:25 26:1
  27:16 28:9,14
  29:22 30:2,5,9,12
  30:17
**jones's** 23:6,14
**jr** 2:16 3:10 7:7
  8:22
**judge** 1:16 6:3
  9:13 21:9 22:8
  30:6
**judgment** 12:10
  21:6,12
**justify** 25:21

**k**

**keep** 16:13 28:6
  28:10
**knollwood** 17:5
  17:17 19:22 20:19
  21:5
**know** 13:1,8
  14:20 16:11,19
  18:21 21:18,19

23:13 24:3 25:13
26:8 27:22 28:19

**l**

**l** 2:15
**late** 11:16 13:9
**law** 15:23 27:8
**lawyers** 3:2 9:11
**lead** 20:11,11
**leading** 18:13
  19:4
**ledanski** 31:3,8
**left** 27:22
**legal** 31:20
**leo** 2:8 7:3,3 8:14
  8:14,16 13:23
  22:15,15 30:13,15
**lift** 14:4 16:3
**lifted** 25:12
**lifting** 16:13
**line** 5:3 7:6 8:2,13
  19:25 29:14
**liquidating** 16:24
**liquidation** 10:19
  10:23 15:11,13
**litigation** 10:15
**living** 10:8,8
  11:21 12:8 14:10
  15:2,2 17:22
  20:24,25 27:18
**llc** 17:5
**llp** 3:9
**local** 6:15 26:6
**logs** 18:16 20:12
  20:13
**long** 14:5 22:25
  24:23
**look** 21:18
**looking** 11:8
**low** 26:23
**lower** 18:18,19

**m**

**mabry** 2:18
**main** 8:4 22:19
**making** 28:21
**manage** 24:15
  27:23
**managed** 26:3
**management**
  11:10,10 12:12
  13:3,5 15:24 18:8
  19:18 21:4 26:9
  28:8
**manages** 12:12
**managing** 24:9
  25:15
**march** 19:15 22:1
**market** 15:14
**marsh** 21:4
**matter** 6:21 9:1
  14:11
**matters** 8:7 29:2
**mcnulty** 21:9
**mean** 6:24 16:3
  22:5 25:3,10,15
  25:18
**medicaid** 19:12
**medicare** 19:12
**mention** 12:6
  13:20
**middle** 23:3 29:12
**million** 12:10 15:3
  15:4,6,6 21:6
**mineola** 1:22
  31:23
**mismanagement**
  13:12,13
**mm** 19:8
**mobile** 10:9,11,12
**momentarily** 8:2
**monday** 16:2
**monitor** 10:18
**monitorship**
  10:23,24

**monro** 1:15 6:3
**month** 14:18
15:19 17:7
**monthly** 17:7
**morning** 6:2 7:21
7:23 8:5,6,15,18
8:21 9:4,6,16,23
14:23
**mortgages** 10:13
24:7,10 25:3
**motion** 4:3 5:6,8
13:10 14:9,16
23:14 29:2,3,18
29:18
**motions** 10:2,3,3
13:15
**move** 11:12
**moving** 11:3
**mute** 6:7
**muted** 8:13

**n**

**n** 2:2,3,18 4:1 5:1
6:1 31:1
**n.a.** 3:1 7:19,22,24
8:19 9:10,15 10:4
**national** 18:17,18
18:19 20:18 23:3
**nature** 9:18
**near** 24:1
**necessary** 12:21
24:9
**need** 7:17 28:10
29:5,22
**needs** 23:20 25:5
**negatively** 19:2
**never** 14:25
**new** 10:17,20
21:10
**nh** 17:5
**noise** 6:9
**non** 15:23 27:8,10
27:14

**northern** 1:2
**nos** 1:5
**number** 8:7,9
10:15,21 11:7
**numerous** 21:8
**nursing** 10:11
12:12 15:5 17:17
18:11,22 27:19
**ny** 1:22 31:23

**o**

**o** 6:1 31:1
**oaks** 1:6 6:21,25
7:8 8:7,12,24 10:6
12:11 15:3 17:3
20:1
**obviously** 14:19
25:4 28:16
**odds** 26:23
**offer** 26:11 27:16
**offered** 15:19
**office** 2:9 7:14 9:1
**ok** 3:5
**okay** 8:2 16:23
28:1
**oklahoma** 9:11
**old** 1:20 3:3 31:21
**ombudsman** 17:2
17:6 23:8,12
**ombudsman's**
16:1 20:1
**omitted** 8:1
**once** 10:24 13:21
14:1
**ongoing** 23:10
**open** 16:13 28:11
**operate** 28:9
**operated** 17:4,18
17:19 19:6
**operating** 12:8
13:25 17:7
**operation** 22:20
**operational** 27:12

**operations** 11:9,9
21:16,16
**oppose** 13:21
16:12 23:15 25:8
**opposition** 14:2
**options** 15:18
**order** 12:14 23:16
29:23,24 30:1,7
30:10
**outstanding** 20:3
20:5
**oversee** 14:2
17:24 24:25
**overseeing** 27:23
**overseen** 11:24
**oversight** 12:21
23:17,25 26:18
27:22 29:9
**owed** 15:4,6
**owned** 12:13 17:4
17:9,18,18,19

**p**

**p** 6:1
**p.c.** 2:3
**paces** 2:5
**page** 5:3
**pandemic** 13:2
14:9 18:14 19:4
20:11
**papers** 14:8
**part** 18:7 24:19
**particular** 13:2
18:12
**parties** 21:4 22:23
28:13
**partners** 18:8
**pass** 24:3
**passed** 18:24
**pathway** 18:9,9
20:8
**patient** 26:8
**patients** 22:21
23:10,21 28:18,21

29:7
**patrick** 3:7 7:20
9:13
**pay** 15:19
**payments** 15:20
**pending** 12:19
26:19
**people** 19:24 22:6
28:16
**percentages** 20:17
20:18
**period** 12:22 13:4
20:11
**permit** 26:12,17
**permitted** 12:13
**person** 7:13
**perspective** 21:17
21:20 27:1
**petition** 14:15
**petitions** 21:8
**phones** 6:7
**pierce** 18:8
**place** 6:7,8,9
11:25 13:22 14:1
18:15 22:1
**plan** 10:19,23
16:24
**plans** 15:11,13
**please** 6:7,8,12,19
6:23 8:10
**pllc** 3:2
**pneumonia** 18:19
**point** 11:4 16:21
18:4 29:4
**pointe** 21:4
**policy** 18:15 19:16
19:19 20:9,10
21:25 22:2
**posed** 12:2
**position** 14:7
15:17,21 22:22
26:5

**positive** 16:2
**potential** 26:11
**preference** 26:25
**prepare** 29:23
**prepared** 13:11
**prevention** 18:15
19:16,19 20:9,10
21:25
**principal** 12:11
12:11
**prior** 14:9
**probably** 11:15
**problematic** 29:9
**proceeded** 11:4
**proceedings** 1:24
6:16 31:4
**produced** 1:25
**professionals** 11:7
24:15
**prohibited** 6:15
**prompt** 14:13
**prop** 21:2
**properties** 15:1
15:15
**property** 28:20
**proposal** 12:7
**proposed** 30:1
**protection** 15:19
**provide** 16:9
26:18,18
**provided** 15:14
**providing** 25:13
**purpose** 27:20
28:25
**pursuant** 6:15
**pursue** 12:15
15:22 26:13,20
**put** 13:11,22
24:14
**putting** 24:12

**q**

**quality** 16:9 25:13
**question** 25:18
**quickly** 14:11,11
14:13
**quiet** 6:9
**quite** 12:3

**r**

**r** 6:1 31:1
**raise** 24:22
**rate** 18:17
**rates** 19:23
**reached** 11:1
22:23
**real** 17:7 24:3
**really** 16:12,15,20
17:8 25:21 27:5
**reason** 16:3,13,15
28:6
**reasonable** 14:21
**receiver** 11:4,25
12:15,24 13:22
14:6,10,17 16:8
16:10 23:19,25
25:20 26:6,13,14
26:21,22 29:1
**receivers** 16:12
**receivership** 24:5
24:14
**record** 6:20 8:7
16:25 31:4
**recorded** 1:24
6:17 8:4,4
**recording** 1:24
6:16
**reference** 24:4
**reflected** 20:1
**regard** 13:1,3
18:25 19:14 20:9
20:16,24 21:12
26:3,8
**regarding** 11:15
22:20

**regards** 22:22
**regulations** 19:11
25:17
**regulatory** 19:17
**reiterate** 21:24
**rejected** 15:20
**related** 19:16
21:25 23:14
**relevant** 16:20
**relief** 4:4 5:4 10:3
11:17,20 12:6,14
12:18,23,23 22:24
23:12 26:12,20
27:2 28:6,24
29:20
**rely** 14:1
**remain** 12:19
19:20
**remedies** 15:23
27:8,14
**reports** 13:25
16:1 17:7 20:1
23:8,9
**represent** 7:6,8
**representatives**
11:2 16:22
**request** 12:2 13:7
13:14 23:13
**requested** 11:19
**requirements**
13:24
**reservationless**
6:17
**resident** 15:25
20:20,21
**residents** 11:22
13:6 16:1 17:11
17:19,24,25 18:3
18:24 21:20 22:9
22:13 24:2,23
25:16,24
**resist** 24:6

**resolution** 11:16
25:1
**resolve** 13:15,15
**respect** 25:6 28:17
**respond** 13:9
**response** 19:14
**responses** 12:4
13:9,10
**responsibility**
6:11
**resulting** 22:10
**retirement** 1:6
6:21 8:7,12
**review** 18:2,7
**richard** 2:10
**right** 9:3,12,16
14:4,22 17:14
24:10 28:1 29:6
29:17,17
**risk** 21:18
**road** 1:20 2:5
31:21
**robert** 2:15,17 7:6
7:7 8:22,23
**route** 24:16
**rule** 6:15
**rules** 6:6
**rulings** 5:2
**run** 26:17 28:4
**running** 25:6 29:6
**russell** 2:10

**s**

**s** 6:1
**satisfied** 24:8
**scheduled** 9:18
**sec** 10:16 12:9
21:6,6,10,12,12
**second** 24:21
**secure** 23:25
**secured** 10:7,10
**see** 16:3 26:16,16
30:3

[seek - ultimately]                                                                Page 8

seek  28:6
seeking  28:25
seen  19:3
senior  11:21 12:8
  14:10 17:22 27:18
sense  13:8 19:24
  20:17 28:22
separate  10:5,12
  10:13
serious  23:4
serve  27:20
service  1:25 6:17
services  1:19
  19:12
set  19:17 29:19
seven  11:15
share  30:10
short  20:19 28:10
shortly  28:22
sides  23:5
significantly
  18:19
silloway  3:7 7:20
  7:22,22 9:13,14
simons  21:1
sit  10:11
situation  11:23
  14:13 26:24
six  11:15
skilled  10:10
  12:12 18:11,22
  27:18
solution  26:11
solutions  31:20
sonya  31:3,8
sorry  7:12 9:8,9
  24:20 30:8
sort  11:16
sound  1:24
southern  12:15,24
  13:22 14:8 26:13
  26:21 28:5 29:1

speak  6:19 20:7
spectrum  24:22
squeezed  21:12
st  21:1
staff  18:25
stapleton  2:2,3
  6:24,25 8:11,11
  9:19,20,22,22,24
  11:14,16 14:22,23
  14:24 17:10,13,15
  17:16,17,20 18:2
  19:7,9,9 21:22,22
  22:18 24:6,18,20
  24:21 25:8,10
  27:3,3,25 28:2,3
  29:5 30:4,6,8,9,16
stapleton's  23:6
state  18:10,12
  20:3 22:10 23:19
  23:20 24:23 25:17
states  1:1,16 7:4
  8:16 22:16,19,24
  23:7,15
status  4:7 6:22
  9:18
stay  4:4 5:4 11:20
  12:6,14,22 14:5
  16:3,13 22:24
  23:10,12 25:11
  26:12,20 28:25
  29:21
stemmed  22:25
street  3:4
struggle  18:24
subject  10:16 21:5
submit  12:14
  29:23,25
subsidiary  17:5,9
  17:19
suite  1:21 2:4,19
  3:11 31:22
supervision  15:15

support  15:13
  21:14
sure  6:8 17:20
  28:21
surprised  12:3
surveys  18:11
  20:3 22:11
sw  2:12

                t

t  31:1,1
take  6:23 8:10
  20:20,21 22:12
  25:23
taken  21:18 23:20
  29:7
takes  14:6
talked  15:18
tampa  2:20
team  24:13,15
ted  2:12 6:25 8:11
  9:22,25 14:24
  19:9 21:22 27:3
telling  21:13
term  24:1 28:10
terminated  10:24
  10:25
terms  14:5 22:23
  23:5
testimony  13:11
  18:23
thank  6:20 7:12
  7:15,17 8:1 9:25
  9:25 14:22 29:22
  30:3,4,5,6,13,15
  30:16,17
theodore  2:2,3
thing  17:23
things  19:4 28:16
  29:4
think  14:12,12,21
  26:4,4,23 27:12
  27:20

third  10:9
thought  28:12
three  10:5,11,12
  10:13,20 11:21,22
  12:16 16:5
time  6:5,19 11:24
  13:1 21:13 24:3
today  6:4 13:14
  14:5 16:20 22:23
  23:16 28:23 29:10
today's  6:4,6
total  19:11
transcript  1:14,25
  31:4
transcription
  1:19,25
tremendous  11:23
  19:5
true  22:22 31:4
truly  29:7
trustee  2:8,9 4:5
  5:8 7:4,24 8:17,20
  10:4,5,25 11:2,22
  16:16,21,23 21:17
  22:16,24 23:1,7
  23:15,15,25 24:7
  24:25 25:9,11,14
  25:22 26:12,15,19
  26:24 29:3,18
trustee's  13:25
  22:19 25:2 26:5
  28:20
tulsa  3:5 9:11
turn  24:5
turner  2:12
two  7:25 10:5,7
  17:21
types  20:13

                u

u.s.  2:9 6:14 16:16
  26:19
ultimately  10:19
  24:5

**understand**   9:17
  13:23 18:23,24
  19:1
**understanding**
  15:12 16:11 19:15
**understood**   12:6
**undertook**   18:10
**underwater**   15:1
  25:4
**unique**   13:1 27:20
**united**   1:1,16 7:3
  8:16 22:16,19,24
  23:7,15
**unmuted**   29:14
**unsecured**   16:4,7
**uti**   18:17
**utilize**   24:13,15

**v**

**vaccination**   20:16
**vaccine**   20:20,21
  20:22
**vaccines**   18:18,20
  20:22
**vanessa**   2:8 7:3
  8:14 22:15
**various**   15:18
**vehemently**   19:10
**veritext**   1:19
  31:20
**virus**   18:22 19:2
**voice**   8:3,13 29:14

**w**

**wait**   6:12
**walt**   3:8 7:23 8:18
  9:21,23,24,25
  16:17 18:5 23:22
  25:25
**want**   16:24 22:7
  22:17
**wanting**   27:5
**wants**   28:4
**way**   11:12 16:23
  23:25 26:7

**we've**   11:14 15:18
  15:19 19:3 20:23
  26:4
**week**   14:9 29:12
  29:15
**weeks**   11:15
**wellbeing**   13:6
**wholly**   17:4,9,19
**widely**   21:19
**wilkes**   2:17
**willing**   28:23
**wimbish**   2:15 7:2
  7:5,5,13,14 8:21
  8:22
**wish**   22:14
**wonder**   21:15
**wrongful**   16:5,5

**x**

**x**   4:1 5:1

**y**

**yeah**   30:9
**year**   10:24 17:21
**years**   10:15
**yesterday**   12:4
  13:9