IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BOKF, N.A., as indenture trustee,<br><br>Plaintiff,<br><br>v.<br><br>GORDON JENSEN HEALTH CARE ASSOCIATION, INC.; KNOLLWOOD NH, LLC; CONQUEST HEALTH SYSTEMS, LLC; MARSH POINTE MANAGEMENT, LLC; and MEDICAL CLINIC BOARD OF THE CITY OF MOBILE (SECOND),<br><br>Defendants. | Case No. 21-00031-KD-B |

**RECEIVER'S OBJECTION TO MOTION TO ACCEPT PURCHASE AND SALE AGREEMENT AND TO ADOPT BROGDON GRANDCHILDREN'S TRUST AS THE STALKING HORSE BIDDER**

Derek Pierce, managing partner of Healthcare Management Partners, LLC ("**HMP**"), as the court-appointed receiver (the "**Receiver**"), hereby objects to the *Motion to Accept Purchase and Sale Agreement and to Adopt Brogdon Grandchildren's Trust as the Stalking Horse Bidder* (Dkt. No. 90) (the "***Motion***") and respectfully states as follows:

## SUMMARY OF OBJECTION

The Receiver is simultaneously serving as a receiver in: (1) this proceeding over the skilled nursing facility (the "**Knollwood Facility**" or "**Knollwood Receivership Estate**"); (2) in *BOKF, N.A., as Indenture Trustee v. Bama Oaks Retirement, LLC, et. al.*, Case No.: 21-00028-KD-B (the "***Assisted Living Proceeding***") over the assisted living and specialty care facility (the "***Assisted Living Facility***" or "***Assisted Living Estate***"); and (3) in *BOKF, N.A., as Indenture Trustee v. Bama Oaks Retirement, LLC, et. al., Case No.: 21-00029-KD-B* (the "***Independent Living***

*Proceeding*") over the independent living facility (the "***Independent Living Facility***," or "***Independent Living Estate***," and collectively with the Knollwood Facility and Assisted Living Facility, the "***Facilities***," and collectively with the Knollwood Receivership Estate and Assisted Living Estate, the "***Receivership Estates***").

The Receiver objects to the Motion because accepting the offer (the "***Brogdon Offer***") from the Brogdon Grandchildren's Trust (the "***Trust***") at this time is not in the best interests of the Receivership Estates. The Knollwood Facility has not been marketed for sale and it is premature to accept any offer at this time. Further, the Receiver has requested and the Trust has failed to provide evidence of the Trust's ability to consummate the proposed transaction including evidence of: (i) the Trust's financial ability to close, and (ii) the Trust's ability to timely obtain the regulatory approvals and licenses necessary to operate the Knollwood Facility. As a result, the Receiver has no evidence of the Trust's ability to consummate the proposed transaction. In addition, it is detrimental to the Assisted Living Estate and Independent Living Estate to accept the Brogdon Offer before marketing the Facilities. The Facilities are all located on the same campus. The Receivership Estates will likely benefit from being marketed together. Finally, the Receiver has consulted with the Indenture Trustee and the Indenture Trustee is in agreement with the Receiver. For these reasons, among others discussed below, the Motion should be denied.

## RELEVANT BACKGROUND

1. The Receiver was appointed over the Knollwood Receivership Estate on March 15, 2021. (Case No.: 21-00031, Dkt. No. 43 (the "***Knollwood Receivership Order***"). The Knollwood Receivership Order provides that, as of January 6, 2021, the amount due on the Knollwood bonds is no less than $10,111,567. (Knollwood Receivership Order p. 4-5).

2. The Receiver was appointed over the Assisted Living Estate on April 13, 2021, 2021. (Case No.: 21-00028, Dkt. No. 42 (the "*Assisted Living Receivership Order*"). The Assisted Living Receivership Order provides that, as of January 6, 2021, the amount due on the Assisted Living bonds is no less than $14,393,078. (Assisted Living Receivership Order p. 5).

3. The Receiver was appointed over the Independent Living Estate on April 13, 2021. (Case No.: 21-00029, Dkt. No. 40 (the "*Independent Living Receivership Order*"). The Independent Living Receivership Order provides that, as of January 5, 2021, the amount due on the Independent Living bonds is no less than $7,104,516. (Independent Living Receivership Order p. 5).

4. The Knollwood Receivership Order, the Assisted Living Receivership Order and the Independent Living Receivership Order each provide that the Receiver has the sole and exclusive right and authority to, among other things, market all or any part of the Receivership Estate for sale. (Knollwood Receivership Order at ¶ 11; Assisted Living Receivership Order at ¶ 11; Independent Living Receivership Order at ¶ 11).

5. The United States Code provides a receiver with two methods to sell property. One, as authorized by the court, at a public sale. *See* 28 U.S.C. § 2001(a). Two, as authorized by the court, at a private sale for a price no less than two-thirds of the appraised value as determined by three disinterested appraisers.[1] *See id*. at § 2001(b).

6. In the exercise of his business judgement, the Receiver has determined that, unless special circumstances arise, it is in the best interests of the Receivership Estates to: (i) sell the Facilities through a court-approved stalking horse auction process, and (ii) market all the Facilities for sale at one time with the assistance of a broker.

---

[1] Courts have approved private sales with fewer than three appraisals under special circumstances.
4843-2190-8468.3

7. Where, as here, the Receiver has received indicators of interest in the Knollwood Facility, a stalking horse auction can create a competitive sales process. A stalking horse auction involves a purchaser (the stalking horse purchaser) who is willing to publicly submit their bid ahead of a formal auction. The stalking horse purchaser's bid effectively establishes a floor for bids at the auction, and ensures that the Receiver will have at least one party who will bid at the auction. A stalking horse auction enables the Receiver to market-test the stalking horse purchaser's initial bid to determine whether higher and better offers can be obtained.

8. Further, the stalking horse auction process also allows the Receiver to market-test the selection of the stalking horse. After a marketing period, the Receiver may have more than one qualified bidder willing to serve as the stalking horse. If so, the Receiver will be able to have an informed negotiation with all parties seeking to be selected as the stalking horse. This allows the Receiver to select the stalking horse bidder after being informed by the market, and can provide the Receiver with the ability to negotiate a higher or better stalking horse bid with one of the parties seeking to be selected as the stalking horse.

9. Upon selecting a stalking horse purchaser, the Receiver will file in each receivership proceeding a motion (a "**Bidding Procedures Motion**") with the Court seeking:

   a. approval of the proposed stalking horse and entry of an order approving procedures for a proposed stalking horse auction process (a "**Bidding Procedures Order**"); and

   b. after the stalking horse auction process is complete, entry of an order approving the sale of the Facility to a successful bidder (a "**Sale Order**").

10. It is also the Receiver's business judgement that simultaneously marketing the Facilities and conducting simultaneous stalking horse auctions of the Facilities creates the best opportunity to attract additional bidders and may result in a higher sale price and reduce risk that

a potential sale may be lost.  The Facilities are all on the same campus and potential buyers may recognize the benefit of using common administration, employees, and services.  Further, simultaneously marketing the Facilities and conducting simultaneous stalking horse auctions will promote judicial economy and save receivership expenses by reducing the number of court proceedings, the need for multiple auction days, and potentially the number of closings.

11.     The Receiver has informed Gordon Jensen Health Care Association, Inc. ("**Gordon Jensen**") and the Trust that it intends to sell the Facility through a court-approved stalking horse auction process and that it will engage the Trust as a potential stalking horse bidder when the Receiver is ready to select a stalking horse purchaser.  *See* Exhibits A and B (email correspondence regarding the Brogdon Offer).  The Trust has not made an offer to purchase the Assisted Living Facility or the Independent Living Facility.  Accepting the Brogdon Offer now would increase costs of administration because the Receiver would have to conduct two marketing and sales processes rather than one simultaneous process for all three Facilities.

12.     The Brogdon Offer provides for the transfer of the on-hand cash balance and accounts receivable to the Trust at Closing.  (Motion, Exhibit A at §2.1 (the defined term "**Properties**" includes the Knollwood Facility's cash balances and accounts receivable).  As of August 6, 2021, the cumulative value of the Knollwood Facility's cash and accounts receivable is approximately $924,600.  After crediting the cumulative value of the cash and accounts receivable, $924,600, against the purchase price, the Brogdon Offer is actually for cash consideration of $5,075,400.  Without testing the market, the Receiver does not believe it is in the best interests of the Knollwood Estate to accept the Brogdon Offer.  The Brogdon Offer, if consummated, would result in a deficiency on the bonds of at least $5 million.

## ARGUMENT

13.     It is premature to accept an offer before marketing the Facilities.

14.     Gordon Jensen asserts that the Brogdon Offer is "superior to any other realistic potential purchase agreement in five key ways." (Motion at 2).

     a.      Gordon Jensen asserts that the Court should order the Receiver to accept the Brogdon Offer because the $6,000,000 purchase price is 43% higher than the August 2020 "as is" valuation, 28% higher the "prospective stabilized" August 2021 valuation, and includes good faith deposits totaling $100,000. (Motion at 2). This factor is not sufficient for the following reasons:

          i.      An offer to purchase obtained after marketing the Knollwood Facility for sale is more probative of the Facility's value than an appraisal. Valuations are inherently speculative. For example, as of August 2020, in its bankruptcy proceedings Gordon Jensen valued the leasehold interest in the Knollwood Facility at $8.7 million. See <u>Exhibit C at p. 4 and D</u>.

          ii.     The appraisal is as of August 26, 2020. The influence of the appraisal should be discounted because the date of valuation is almost a year old and an appraiser may make different assumptions based on the current market and operational and financial changes implemented by the Receiver.

     b.      Gordon Jensen asserts that the Court should order the Receiver to accept the Brogdon Offer because the purchase price will be paid in full at Closing. (Motion at 2). This factor is not supportive of the Motion. In the Receiver's experience, it is very common for the purchase price to be paid in full at Closing. The purchase price has been paid at Closing in every receivership sale conducted by the Receiver.

c. Gordon Jensen asserts that the Court should order the Receiver to accept the Brogdon Offer because it avoids broker's fees. (Motion at 2). It should be noted that the Brogdon Offer contemplates the payment of a broker commission. (Motion, Exhibit A at § 9.2(b) ("Seller shall pay the following costs in connection with the consummation of the Closing . . . (ii) all commissions owed to any broker . . . .") and § 12.1 ("Except as set forth on Schedule 12.1, neither party has dealt with any broker . . . ."). First, the absence of a broker commission does not mean that the Brogdon Offer is the highest and best offer. The Brogdon Offer contemplates the Trust serving as a stalking horse bidder. Even if the Receiver were to accept the Brogdon Offer, it would be appropriate to market-test the Brogdon Offer with a broker-supported stalking horse auction. In such a case, a broker may insist on a commission based on the amount of the successful bid which would include the $6 million. It is also possible that the Receiver may have limited success engaging a qualified broker if the amount of the Brogdon Offer is excluded from the broker's commission. As a result, even if the Brogdon Offer is accepted there will most likely be a broker commission paid. Finally, the Receiver has determined it is in the best interests of the Receivership Estate to retain the services of a broker to aide in the marketing of the Facilities.[2] After interviewing several brokers, if the Motion is denied, the Receiver intends to select Blueprint Healthcare Real Estate Advisors, LLC ("***Blueprint***") as the Receiver's real estate broker and exclusive listing agent. Blueprint is a senior housing and skilled nursing brokerage. Blueprint has done twelve deals in Alabama with a transaction volume of $192 million and currently has five deals on-market in Alabama. The Receiver has

---

[2] Pursuant to Paragraph 8(xxiv) of the Knollwood Receivership Order, the Receiver is authorized to engage a broker to assist the Receiver in marketing the Facilities for sale, without further order of the court. (Knollwood Receivership Order at ¶ 8(xxiv)).
4843-2190-8468.3

worked with Blueprint in one other receivership involving an assisted living facility in Yuma, Arizona. Blueprint has agreed to the following commission structure for the Facilities: the greater of 2% of the purchase price or a minimum of $200,000. Given the negotiated commission structure, it is in the best interests of the Receivership Estates to take the Facilities to market before selecting a stalking horse for any of the Facilities.

        d.      Gordon Jensen asserts that the Court should order the Receiver to accept the Brogdon Offer because it contains few, if any, representations from the Seller, which will enable it to close promptly. (Motion at 2). This factor is not dispositive. In the Receiver's experience, buyers rely on the scope of the Court's order approving a sale rather than any representations made by the Receiver.

        e.      Gordon Jensen asserts that the Court should order the Receiver to accept the Brogdon Offer because a prompt sale will reduce the continuing 5% management fees plus attorneys' fees that are being requested by the Receiver. (Motion at 2). It is the Receiver's judgment that further costs of administration are justified by the need for a fair, transparent, and fulsome marketing process.

15.      The Receiver believes its proposed marketing strategy is in the best interests of the Knollwood Receivership Estate for the following reasons:

        a.      It demonstrates to potential bidders that the Receiver is running a fair and transparent process. Potential bidders may be reluctant to engage in a process where an insider like the Trust is selected as the stalking horse bidder before the Facilities are marketed.

        b.      It allows the market to establish the amount and terms of the initial bid.

   c. It allows the receiver to market test the selection of a proposed stalking horse bidder.

   d. It benefits all Receivership Estates and is not likely to harm the Knollwood Receivership Estate.

   e. It will promote judicial economy and save receivership administration costs.

16. Finally, the Motion should be denied because the Brogdon Offer as executed and presented to the Court is not acceptable to the Receiver. The following items, among others, are objectionable:

   a. The Brogdon Offer provides that Gordon Jensen Health Care Association, Inc., is the seller. The assets are all under the control of the Receiver and the Receiver is the proper seller of the assets.

   b. The purchase price is not acceptable. The Brogdon Offer provides for the transfer to the Trust of the cash balance and accounts receivable at Closing. (Motion, Exhibit A at §2.1 (the defined term "***Properties***" includes the Knollwood Facility's cash balances and accounts receivable). The anticipated value of the cash on hand and accounts receivable as of the date of Closing is unknown. As of August 6, 2021, the outstanding accounts receivable are approximately $576,000. A reasonable sale value for the accounts receivable is 85% of the outstanding accounts receivable or approximately $489,600. As of August 6, 2021, the Facility has cash on hand of approximately $435,000. After crediting the cumulative value of the cash on hand and accounts receivable, $924,600, against the purchase price, the Brogdon Offer is actually for cash consideration of $5,075,400. The proposed broker, Blueprint, has previously obtained an offer for the Knollwood Facility in the amount of $7.8 million. Further, the Receiver would normally

retain the cash on hand for the benefit of the Knollwood Estate and to ensure that trade vendors, costs of operation, and other costs of administration were paid.

    c.    The terms of the Expense Reimbursement in the Brogdon Offer are not acceptable.

## CONCLUSION

The Motion is due to be denied.  The Receiver rejects the Trust's offer, at this time, because he has not determined whether it is the highest and best offer.  Further, the Receiver rejects the Trust's offer, at this time, because it will benefit the Receivership Estates to market the Facilities together.  The Trust should participate in the sales process as suggested by the Receiver.  The Receiver has consulted with the Indenture Trustee, and the Indenture Trustee is in agreement with the Receiver.

Wherefore, premises considered, the Receiver requests the Court:

    a.    deny the Motion; and

    b.    grant such other and further relief that the Court deems just and appropriate.

Dated: August 6, 2021　　　　　　　　　　Respectfully submitted,

                                            /s/ Ryan K. Cochran
                                            Brian J. Malcom
                                            WALLER LANSDEN
                                            DORTCH & DAVIS, LLP
                                            1901 Sixth Ave. North, Suite 1400
                                            Birmingham, AL 35203
                                            Tel: (205) 226-5706
                                            Fax: (205) 214-7342
                                            Brian.Malcom@wallerlaw.com

                                            - and -

Ryan K. Cochran
Alabama Bar No. 1748N70C
WALLER LANSDEN
DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Tel:  (615) 850-8778
Fax:  (615) 244-6304
ryan.cochran@wallerlaw.com

*Attorneys for the Receiver, Derek Pierce of Healthcare Management Partners, LLC*

## CERTIFICATE OF SERVICE

      I, the undersigned, declare that a true and correct copy of the foregoing was served via the Court's CM/ECF electronic noticing system on the date set forth below on the following:

W. Joseph McCorkle, Jr.
Balch & Bingham
P.O. Box 78
Montgomery, AL 36101
jmccorkl@balch.com

Frederic Dorwart
James A. Higgins
Nora R. O'Neill
Frederic Dorwart Lawyers
124 E. Fourth Street, Ste. 100
Tulsa, OK 74103
fdorwart@fdlaw.com
jhiggins@fdlaw.com

Walter Jones
Patrick N. Silloway
Balch & Bingham
30 Ivan Allen Jr. Blvd., Ste. 700
Atlanta, GA 30308
wjones@balch.com
psilloway@balch.com

*Attorneys for BOKF, N.A.*

Thomas R. Boller
Mary Allie Elizabeth Boller
Thomas R. Boller, PC
150 Government Street, Ste. 1001
Mobile, AL 36602
tom@bollerlawfirm.com
allie@bollerlawfirm.com

*Attorneys for Bama Oaks Retirement, LLC and Saint Simons Health Care, LLC*

Michael Mark Linder, Jr.
The Atchison Firm
3030 Knollwood Drive
Mobile, AL 36693
michael.linder@atchisonlaw.com

*Attorney for Medical Clinic Board of the City of Mobile*

This 6th day of August, 2021.          /s/ Ryan K. Cochran
                                                                               OF COUNSEL